567 A.2d 663

Calvin ALSTON and Dorothy Alston, his wife, Appellants,

v.

ST. PAUL INSURANCE COMPANIES, John T. Williams, M.D. and Vocational Rehabilitation Services, Inc. and Janet H. Rohrer.

Superior Court of Pennsylvania.

Argued June 5, 1989.

Filed Dec. 8, 1989.

Reargument Denied Dec. 27, 1989.

Joseph Lurie, Philadelphia, for appellants.

Andrew J. Gallogly, Philadelphia, for St. Paul, appellee.

Paul A. Barrett, Scranton, for Vocational Rehabilitation, appellee.

Before CIRILLO, President Judge, and BROSKY, ROWLEY, McEWEN *, OLSZEWSKI, TAMILIA, POPOVICH, JOHNSON and MELINSON, JJ.

CIRILLO, President Judge:

This is an appeal from an order of the Court of Common Pleas of Delaware County granting summary judgment in favor of St. Paul Insurance Companies, Vocational Rehabilitation Services, Inc., and John T. Williams, M.D. We affirm.

On April 24, 1981, while working on a ladder as a carpenter, appellant, Calvin Alston, fell and sustained numerous injuries including avulsion fractures of both wrists, a compression fracture of his spine, and aggravation of degenerative changes in his neck and back. Alston's workmen's compensation carrier, St. Paul Insurance Companies (St.

---

* Judge McEwen did not participate in the decision of this case.

Paul), assigned Alston's file to Robert Dunham, a claims examiner, and began paying benefits.

Shortly thereafter, St. Paul contracted with appellee, Vocational Rehabilitation Services, Inc. (Vocational Services), to obtain Alston's medical records, to monitor his recovery, and to report to St. Paul. In late February, 1982, Vocational Services assigned Alston's file to Janet Rohrer, a "rehabilitation nurse," and employee of Vocational Services.

In February, March, and early April, 1982, J. Brendan Wynne, D.O., met with Alston and evaluated his medical condition. During this time, Dr. Wynne treated Alston for aggravation of his pre-existing degenerative condition and possible traumatic pericarditis. Dr. Wynne indicated to Ms. Rohrer that he was unable to calculate a firm date upon which Alston could return to work. Ms. Rohrer reported Dr. Wynne's findings to St. Paul, after which the company representatives allegedly held an in-house conference and apparently decided to institute a more aggressive approach toward Alston.

On May 14, 1982, Ms. Rohrer met with Mr. and Mrs. Alston to discuss Alston's medical treatment and prognosis. At that time, Ms. Rohrer indicated that she intended to schedule an appointment with appellee, John T. Williams, M.D., whom she allegedly described as a "miracle worker." According to the Alstons, Ms. Rohrer indicated that Dr. Williams would treat and cure Mr. Alston, although the appointment was ostensibly for the purpose of obtaining an independent medical examination.

On August 31, 1982, Alston appeared for Dr. Williams' examination. Alston claims that at no time prior to that examination was he informed that an independent medical examination would occur, or that Dr. Williams had the ability to sign a physician's affidavit of recovery, or that he was entitled to have his own physician accompany him to the examination. Allegedly without the benefit of Alston's prior medical records, x-rays, or contact with his prior treating physicians, Dr. Williams conducted a twenty minute examination, and at the conclusion of that exam, told

Alston that he was ready to return to work. Immediately after Alston's departure, Dr. Williams notified Ms. Rohrer that he would sign an affidavit of recovery, which he did in fact execute later that same day.

Having secured the affidavit of recovery, a representative of St. Paul allegedly approached Alston in the hopes of negotiating a lump sum settlement of his workmen's compensation benefits. Alston rejected the offer as insufficient, and shortly thereafter St. Paul filed a petition to terminate Alston's benefits. Alston's benefits were discontinued for nineteen months, until proceedings before a referee denied St. Paul's petition to terminate, and reinstated the benefits. The referee also imposed attorney's fees upon St. Paul. St. Paul appealed the referee's decision to the Workmen's Compensation Appeal Board, who affirmed the underlying decision, but reversed the award of attorney's fees on its own finding of "reasonable contest." No appeal was taken from this decision.

On July 6, 1984, Alston commenced this civil tort action through a complaint seeking both compensatory and punitive damages from St. Paul, Vocational Services, and Dr. Williams. The gravamen of Alston's action is the allegation that the named defendants engaged in a course of tortious conduct through which they conspired to fraudulently deny Alston's benefits due under the Pennsylvania Workmen's Compensation Act. This conspiracy, Alston averred, was advanced by the parties' negligent and intentional misrepresentation of facts to Alston.

A motion for summary judgment was filed on behalf of all three appellees. In that motion, the appellees argued that our decision in *Rosipal v. Montgomery Ward,* 360 Pa.Super. 570, 521 A.2d 49 (1987), *alloc. granted* 516 Pa. 635, 533 A.2d 93 (1987), *appeal dismissed* 517 Pa. 460, 538 A.2d 495 (1988), holding that an employee's tort action against her employer was barred by the exclusivity provision of the Workmen's Compensation Act, precluded Alston's action. On March 3, 1988, the Honorable Frank T. Hazel entered an order granting summary judgment in

favor of St. Paul, Vocational Services, and Dr. Williams. This appeal followed.

Alston advances the following two issues for our review: (1) whether the trial court properly concluded that the Workmen's Compensation Act provides statutory immunity from a civil lawsuit to workmen's compensation insurance carriers who inflict injuries outside the scope of employment, by malicious and fraudulent conduct and by abuse of the legal process to terminate workmen's compensation benefits; and (2) whether the trial court properly granted statutory immunity under the Workmen's Compensation Act to appellees Williams and Vocational Services, neither of whom are employers or insurance carriers.

Pennsylvania Rule of Civil Procedure 1035(b) provides, in pertinent part, that on a motion for summary judgment:

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pa.R.C.P. 1035(b); *Dume v. Elkcom Co.,* 368 Pa.Super. 280, 533 A.2d 1063 (1987). When reviewing a trial court's imposition of summary judgment, we have stated:

> Summary judgment is made available by Pa.R.C.P. 1035 when the pleadings, depositions, answers to interrogatories, admissions on file and supporting affidavits considered together reveal no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. To determine the absence of a genuine issue of material fact, we must view the evidence in the light most favorable to the non-moving party and any doubts must be resolved against the entry of judgment. In so doing, we accept as true all well-pleaded facts in appellant's pleadings and give appellant the benefit of all reasonable inferences to be drawn therefrom. Summary judgment is appropriate only in those cases which are clear and free from doubt.

*Bobb v. Kraybill,* 354 Pa.Super. 361, 364, 511 A.2d 1379, 1380 (1986) (citations omitted). Thus, an appellate court is required to determine the existence of any genuine issues of material fact which the trial court may have overlooked. In so doing, we may reverse the trial court only where there has been an error of law, or a clear or manifest abuse of discretion. *Lened Homes v. Department of Licenses and Inspections,* 386 Pa. 50, 123 A.2d 406 (1956); *Dume, supra.* Applying these principles, we are faced with the task of determining whether the trial court properly concluded that no genuine issue of material fact existed and that Alston's claim was barred as a matter of law.

■ Alston initially claims that the trial court erred in granting summary judgment in favor of St. Paul, Vocational Services, and Dr. Williams because their allegedly tortious conduct "did not arise in the scope of [his] employment under the act; did not occur on the employer's premises and did not occur while [he] was acting in furtherance of his employer's interest." Since the incidents which gave rise to the cause of action occurred months after the initial on-the-job injury, Alston maintains that they do not fall within the ambit of the exclusivity provision of the Workmen's Compensation Act. We cannot agree.

Pennsylvania is an industrialized state. In order to promote certainty in the legal affairs of Pennsylvania's industrial base, while protecting employees and their families from economic devastation arising from work-related injuries, our legislature formulated Pennsylvania's Workmen's Compensation Act. The Act was designed to assure quick, fair, and certain compensation for employment-related injuries without requiring the complainants to resort to the courts for recovery. *See Blouse v. Superior Mold Builders, Inc.,* 363 Pa.Super. 516, 518, 526 A.2d 798, 799 (1987).

The Act specifically delineates the coverage which it affords. Section 301(a) provides:

Every employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment, and such compen-

sation shall be paid in all cases by the employer, without regard to negligence....

77 P.S. § 431. Although this "no-fault" system of recovery applies equally to all employment-related injuries, the legislature determined that employers should not be accountable for those injuries inflicted by third persons, as a result of nonemployment related matters. This concept is embodied in section 301(c), which states:

The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; *but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer....*

77 P.S. § 411(1) (emphasis added). Aside from this exception, the Workmen's Compensation Act clearly sought to provide the injured worker with his or her exclusive remedy at law. In essence, the Act was based on a theory of "trade-offs." On the one hand, the employer is forced to surrender the numerous defenses which might be available in an employee's action at common law. However, the injured employee's recourse is strictly confined to those remedies provided by the statute itself, thus providing the employer with some degree of certainty in its legal affairs. Section 303(a) integrates the exclusivity principle into our statutory scheme, and provides:

(a) *The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes,* his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 P.S. § 481 (emphasis added). Commenting upon this section of the Act, our supreme court has stated:

> Section 303(a) of the Workmen's Compensation Act, like its predecessor, is a version of the historical *quid pro quo* employers received for being subjected to a no-fault system of compensation for worker injuries. That is, while the employer assumes liability without fault for a work-related injury, he is relieved of the possibility of a larger damage verdict in a common law action.

*Lewis v. School District of Philadelphia,* 517 Pa. 461, 471, 538 A.2d. 862, 867 (1988) (citations omitted); *see also* 2A A. Larson, *Workmen's Compensation Law,* § 65.11 (1987 ed.). In short, the exclusivity provision "bars tort actions flowing from *any* work-related injury." *Kline v. Arden H. Verner Co.,* 503 Pa. 251, 256, 469 A.2d 158, 160 (1983).

We note at the outset that this suit was not brought against Alston's statutory "employer." Rather, Alston instituted this civil action against St. Paul, his employer's workmen's compensation insurance carrier, as well as those individuals retained by St. Paul to shepherd his case through the compensation process. This fact, however, does not alter our analysis of Alston's claim. The same immunity from tort liability enjoyed by an employer has been extended to workers' compensation *insurers* by section 305 of the Act. Section 305 provides, in pertinent part:

> Every employer liable under this act to pay compensation shall insure the payment of compensation in the State Workmen's Insurance Fund, or in any insurance company ... authorized to insure such liability in this Commonwealth.... *Such insurer shall assume the employer's liability hereunder and shall be entitled to all of the employer's immunities and protection hereunder....*

77 P.S. 501 (emphasis added); *see Jadosh v. Goeringer,* 442 Pa. 451, 275 A.2d 58 (1971) (employer's workmen's compensation insurer was included within term "employer" as used in immunity provisions of Workmen's Compensation Act and shares employer's immunity from common-law liability); *DeJesus v. Liberty Mutual Insurance Company,* 439 Pa.

180, 268 A.2d 924 (1970) (same); *Brown v. Travelers Insurance Company,* 434 Pa. 507, 254 A.2d 27 (1969) (same); *Leonard v. Harris Corp.,* 290 Pa.Super. 370, 434 A.2d 798 (1981) (same).

In *Brown, supra,* our supreme court stated:

[T]he relevant policy considerations reinforce our conclusion that the legislature intended that the insurance carrier would share in the employer's immunity.... [I]f the appellant's position were adopted, then a regrettable discrimination would result between employers who are insured by the State Workmen's Insurance Fund or are self-insuring employers and those employers who carry private insurance.... Such discrimination would be inequitable and unjust both to the employers who utilize private insurance and to their employees: first, these employers would be placed at a competitive disadvantage since private insurance carriers would necessarily have to raise their rates to offset the increased liability placed upon them by the result urged by the appellant ... We cannot and do not believe that the legislature ever intended the Workmen's Compensation Act to produce such discrimination.

434 Pa. at 514, 254 A.2d at 29. Similarly, in *Jadosh, supra,* Justice O'Brien opined:

Although [I] dissented in *Brown v. Travelers Ins. Co.,* 434 Pa. 507, 254 A.2d 27 (1969), and again in *DeJesus, supra,* where it was held that the insurance carrier is included within the term "employer" as it is used in Section 303 of the Workmen's Compensation Act and, therefore, shares the employer's immunity from common-law liability, the issue has been finally determined.... Appellant argues, however, that the statute was only intended to allow the insurer to share the immunities of the employer when the employer itself is concerned, not when the insurer is also involved as an independent contractor.... Why, asks the appellant rhetorically, should immunity be granted to a third party merely because it also happens to be the compensation insurer

for the employer? We do not think the circumstances were all that coincidental. We believe the language of the statute is clear. PMA ... was acting as an insurer and is, therefore, entitled to all of the employer's immunity under the act.

442 Pa. at 455–56, 275 A.2d at 61. In short, it is abundantly clear that the express language of section 305, coupled with judicial interpretation of that section in relation to section 303(a), confers all of the employer's immunities and protections under the Act to the workmen's compensation insurer.

The legal immunity which is afforded to employers and their compensation insurers extends not only to acts of negligence, but also to claims based on intentional, wanton and willful misconduct, such as those advanced in the case before us today. In *Poyser v. Newman & Company*, 514 Pa. 32, 522 A.2d 548 (1987), the appellant, Stephen Poyser, filed suit against his employer, seeking redress for physical injuries he suffered while in the course of his employment. Poyser claimed that Newman disregarded governmental safety regulations and deliberately exposed him to a known hazard. Having committed willful and wanton disregard for his safety, Poyser maintained that Newman's actions rose to the level of an intentional tort, which should pierce the shield of immunity. Newman, on the other hand, asserted that it was immune from Poyser's trespass action because of the exclusivity provision in section 303(a). The trial court agreed with Newman and granted its motion for judgment on the pleadings. We affirmed, and the supreme court did likewise, reasoning:

There is no Pennsylvania judicial authority supportive of the result the appellant seeks. The argument he presents is one based entirely on his view of the relationship between the Act and other laws and regulations which bear upon safety in the workplace.... It is true that the appellate courts of some other states have held that wanton and willful misconduct by an employer is tantamount to an intentional tort, and as such, prevents the operation of a statutory exclusive-remedy provision. It

must be noted, however, that those cases rested on provisions in the state workmen's compensation statutes which expressly preserved the right of an employee to sue in tort where his injury was caused by the employer's intentional wrongdoing. There is no such provision in The Pennsylvania Workmen's Compensation Act. The appellant's argument is an interesting one; but it is one that must be resolved by the General Assembly, not this Court. What he is asking us to do is to engraft upon section 303(a) of the Act an exception the legislature did not see fit to put there. A reading of the Act will disclose that the legislature was not unmindful of the issue of intentionally caused harm.... Since it is clear that the legislature had the issue of intentional harm in mind, and yet did not mention it in connection with section 303(a), we are constrained to conclude that the legislature did not intend the result for which the appellant argues.

514 Pa. at 38, 522 A.2d at 551. Applying *Poyser* to a case where an employee allegedly sustained injuries as the result of the employer's intentional failure to warn of the known dangers of toxic chemicals, we stated:

As [the *Poyser*] decision makes clear, where employees sustain injuries during the course of employment as a result of an alleged intentional wrongdoing by their employer, the employees' exclusive remedy is under the Workmen's Compensation Act; a civil action in tort for the same injuries will not lie.

*Blouse,* 363 Pa. Super at 521, 526 A.2d at 801.

The immunity discussed above has recently been extended to civil tort actions arising from the *handling* of a worker's compensation claim. In *Rosipal v. Montgomery Ward,* 360 Pa.Super. 570, 521 A.2d 49 (1987), *alloc. granted* 516 Pa. 635, 533 A.2d 93 (1987), *appeal dismissed* 517 Pa. 460, 538 A.2d 495 (1988), Joann Rosipal, an employee at Montgomery Ward, sustained an injury on her employer's premises while performing her duties as a security guard. Montgomery Ward filed a notice of compensation payable, and initiated wage indemnity payments. Almost two

months later, Montgomery Ward, along with its workmen's compensation carrier, Aetna Insurance Company, filed a petition for termination of compensation supported by a physician's affidavit of recovery. Rosipal's benefits were curtailed; however, following a hearing before a workmen's compensation referee, compensation benefits were reinstated.

Rosipal then commenced a civil action against Montgomery Ward alleging economic duress, intentional infliction of emotional distress, procuring a "false, fraudulent and perjured affidavit [of recovery]," and breach of compensation agreement. In response, Montgomery Ward filed preliminary objections in the nature of a demurrer, averring that it was immune from Rosipal's action pursuant to section 303(a) of the Act. The trial court overruled Montgomery Ward's demurrer, and concluded that Rosipal's claim "did not arise from an employment related accident such as would be covered by the Workmen's Compensation Act." Following a petition to review to this court, we reversed the order of the trial court, and sustained Montgomery Ward's demurrer thereby dismissing the complaint.

In rejecting the trial court's finding that the injury did not arise from an employment related accident such as would be covered by the Act, we stated:

> We disagree with this analysis as the underlying factor in the present action is the alleged injury suffered by the employee while she was acting as a security guard. *In the absence of the injury, there would have been no workmen's compensation proceedings out of which the instant civil action arose....* The appellee has failed to state a cause of action in her complaint as all of the allegations have as the ultimate basis an injury compensable under the Workmen's Compensation Act and her claims must be considered within the framework of the Act.

360 Pa.Super. at 573–74, 521 A.2d at 50–51 (emphasis added).

It is apparent from our supreme court's pronouncement in *Poyser*, as well as our holdings in *Blouse* and *Rosipal*, that when employees sustain injuries during the course of their employment, because of an intentional wrongdoing by their employer, the employees' exclusive remedy, for the injury itself or the handling of the claim, lies within the framework of the Workmen's Compensation Act, not in a civil action sounding in tort. The express terms of section 305 extend this statutory immunity to workers' compensation insurers, as well as to the employers of the injured worker.

Pennsylvania's Workmen's Compensation statute provides a host of administrative remedies for those claimants who believe their compensation has been wrongfully suspended or terminated by the workmen's compensation insurer. Aggrieved claimants can receive interest on all past due compensation; litigation costs; and counsel fees where the insurer did not have a reasonable basis to contest the claim. In addition, they can receive remuneration for fees paid to witnesses, medical examinations, and lost time to attend the proceedings to contest the termination or suspension. Moreover, they may recover against the insurer in an amount up to twenty percent of the benefits due in cases of unreasonable or excessive delays. Those insurers who repeatedly or unreasonably fail to pay prompt compensation may have their license to transact business revoked or suspended by the Insurance Commissioner. *See generally*, 77 P.S. §§ 774.1–997. Thus, in addition to assuring quick, fair and certain compensation, our legislators also considered the plight of an injured worker who might be intimidated or disadvantaged by the superior bargaining position of an insurance company, and responded with sanctions and procedures designed to obviate the need for common law actions. This system may not be perfect, but its weaknesses should be cured by further legislation rather than the creation of a parallel scheme for judicial inquiry into an area so carefully legislated by our General Assembly. "Where statutory remedies are provided, the proce-

dure prescribed by the statute must be strictly pursued to the exclusion of other methods of redress." *Interstate Traveler Services v. Commonwealth Department of Environmental Resources*, 486 Pa. 536, 542, 406 A.2d 1020, 1023 (1979).

We are not unfamiliar with case law emanating from other jurisdictions which allow common law actions against workmen's compensation insurers. *See, e.g.,* R. Schnechter, *Bad Faith Handling of Workers' Compensation Claims: Demise of the Exclusivity Provision*, 24 Trial 66 (1988); B. Lown, *Remedies of Workers Compensation Claimants Against Workers' Compensation Carriers*, 30 New Hamp. B.J. 21 (1988). However, as Chief Justice Nix noted in *Poyser*, our lawmakers considered the issue of intentional acts while drafting our Workmen's Compensation Act, and nonetheless decided to preclude civil tort actions stemming from those acts. Reconsideration of that policy determination is more appropriately left to the wisdom of our General Assembly, and not the courts. Addressing a claim similar to the one before us today, Chief Justice Phillips of the Texas Supreme Court cogently noted:

> The Workers' Compensation Act is by no means perfect, as recent criticisms from representatives of workers, employers, and insurers have made clear. Nonetheless, thousands of claims are resolved under its auspices every year. In this, it serves it primary legislative purposes of assuring certain and timely resolution of claims. In my view, this court's [recognition of a cause of action against the workmen's compensation insurer] invites the proliferation of lawsuits and the possibility of double recoveries and inconsistent findings of fact. To permit a tort remedy in addition to the remedies provided by statute betrays the bargain implicit in the Act and necessarily impairs the function of the compensation system.

*Aranda v. Insurance Company of North America,* —— Tex. ——, ——, 748 S.W.2d 210, 218 (1988) (Phillips, C.J. dissenting). Having viewed all the evidence proffered in

this case in the light most favorable to Alston, and resolving any doubts against entry of judgment, we conclude that Judge Hazel properly determined that appellees were entitled to judgment as a matter of law.

■ We also dismiss Alston's claim that the trial court erred when it held appellees Williams and Vocational Services immune from suit. The social policies underpinning the grant of immunity to employers and their compensation insurers apply equally to those individuals employed by the insurer to review the case. To hold otherwise would thwart the clear legislative mandate of providing workmen's compensation benefits as the employee's exclusive remedy.

Order affirmed.[1]

ROWLEY, J., files a dissenting statement and joins dissenting statement by JOHNSON, J.

Concurring and dissenting opinion by BROSKY, J.

Dissenting statement by JOHNSON, J.

MELINSON, J. joins dissenting statement by ROWLEY and JOHNSON, JJ.

1. In dismissing Alston's claims, we expressly overrule our panel decision in *Kuney v. PMA Insurance Company,* 379 Pa.Super. 598, 550 A.2d 1009 (1988). The majority in *Kuney* relied upon *Reed v. Hartford Indemnity Company,* 367 F.Supp. 134 (E.D.Pa.1973), in finding that the immunity provided to employers under the Workmen's Compensation Act did not extend to an insurer when its conduct was "separate and apart" from claimant's work-related injury. We note, however, that after the injuries occurred which gave rise to the *Reed* case, the Pennsylvania Workmen's Compensation Act underwent a substantial revision. In 1972, the General Assembly eliminated the phrase "*accident* in the course of employment," and broadened the language to encompass "an *injury* to an employee ... arising in the scope of his employment and related thereto." 77 P.S. § 411(1). Without the "accident" language, the employee could no longer avoid the exclusive remedy provision by showing that the injury did not arise from an "accident." *See* Note, *Intentional Employer Misconduct and Pennsylvania's Exclusive Remedy Rule after Poyser v. Newman & Co.:* A Proposal for Legislative Reform, 49 U.Pitt.L.Rev. 1127, 1129 (1988). More importantly, *Kuney* contravenes the express statutory language contained in section 305, and our supreme court's mandate in *Poyser.*

BROSKY, Judge, concurring and dissenting.

I am in general agreement with the dissenting members of the panel that the term "injury", within the meaning of the Workmen's Compensation Act, does not include fraudulent actions of an insurer as alleged here.

Thus, were an individual able to demonstrate that an insurer fraudulently deprived him or her out of benefits I would find such an action outside the scope of the Act and subject to redress in tort. However, I hesitate to join completely in dissent simply because the Workmen's Compensation Appeal Board found that the insurer had a "reasonable contest." This finding, which was neither appealed nor pursued further, it seems to me, would be preclusive of a fraud action in the present case since it would be res judicata in any subsequent proceedings, including the one contemplated here. I simply cannot see the appellant moving to trial in the face of a conclusive determination that the insurer had a reasonable contest to further workmen's compensation claims. However, in general, I find the majority's analysis quite suspect.

It is true that Pennsylvania is an industrialized state and that workmen's compensation provides a useful purpose with mutual trade-offs by both employer and employee. However, nowhere within the concept of work related injury under the Act can you reasonably fit a fraudulent deprivation of a rightfully acquired benefit under the Act. Nor are the purposes of the Act furthered to any perceivable degree by providing a shield to insurers relating to post accident matters and unconnected to the workplace. Allowing a tort action against an insurer which happens to fraudulently deprive an individual of a benefit should not in any way hinder or impair industrial growth and operation, nor should it work to unfairly impose unlimited liability to a good faith employer for events occurring naturally during the course of operating a business. These are general purposes, on the employer's side, for passage of the Act.

In contrast, preventing an individual from the subject action will in no way aid the injured employee in assuring

fair and prompt monetary compensation for injury suffered in the workplace regardless of fault. This is the primary purpose for passage of the Act on the employee's side and certainly it cannot be beneficial to this interest to limit the legal responsibility of an insurer who engages in fraudulent practices to limit its own expenditures to injured employees. Thus, I can concur only in the result reached by the majority.

ROWLEY, Judge, dissenting.

I join the Dissenting Statement by Judge Johnson. I also join in the compelling analysis by Judge Brosky contained in the last two paragraphs of his Concurring and Dissenting Opinion. However, I do not agree with Judge Brosky's conclusion that the findings by the Workmen's Compensation Appeal Board are *res judicata* as to the claims asserted by appellants in the present case.

MELINSON, J., joins.

JOHNSON, Judge, dissenting.

For the reasons set forth in my Dissenting Opinion in *Rosipal v. Montgomery Ward,* 360 Pa.Super. 570, 521 A.2d 49 (1987), and because I continue to believe that *Kuney v. PMA Insurance Company,* 379 Pa.Super. 598, 550 A.2d 1009 (1989) (pet. for alloc. filed at 241 E.D. Allocatur Docket 1989, 3–13–89) is a correct statement of the law, I must dissent.

I cannot believe that our legislature intended the use of the word "injury" in the Workers' Compensation Act to encompass intentional fraudulent acts of insurance companies and their employes designed to deny benefits due Pennsylvania workers. *Cf., Reed v. Hartford Accident and Indemnity Co.,* 367 F.Supp. 134 (E.D.Pa.1973).

MELINSON, J., joins.