**Patricia WINTERBERG; James Winterberg, Individually and as Husband and Wife, Plaintiffs/Appellants,**

v.

**TRANSPORTATION INSURANCE COMPANY t/a CNA Insurance Company, Defendant/Appellee.**

No. 95–1206.

United States Court of Appeals, Third Circuit.

Argued Oct. 10, 1995.

Decided Dec. 14, 1995.

James T. Vernile (argued), Philadelphia, PA, and Carole L. McHugh, North Hills, PA, for Appellants.

Leslie Martinelli Cyr (argued), Susan Silverman Riechelson, LaBrum & Doak, Philadelphia, PA, for Appellee.

Before: GREENBERG, LEWIS and ROSENN, Circuit Judges.

## OPINION OF THE COURT

ROSENN, Circuit Judge.

The Pennsylvania state legislature, in 1915, enacted its first Workmen's Compensation Act ("the Act") in response to strong public sentiment. It was a humanitarian measure providing no-fault compensation to substantially all workers for injuries sustained during the course of employment. The primary purpose of the legislation was to substitute a method of accident insurance in place of com-

mon rights and liabilities "which would afford a workman a measure of protection against injuries and relief in case of accident, which was denied under existing law." *Blake v. Wilson,* 268 Pa. 469, 112 A. 126, 128 (1920). As *quid pro quo*, employees under the system waived their common law rights of action. The Act also abolished common law defenses, routinely and effectively raised by employers, of voluntary assumption of risk, contributory negligence and fellow employee negligence. *American Association of Meat Processors v. Casualty Reciprocal Exch.,* 527 Pa. 59, 588 A.2d 491 (1991).

Thus, the Act provided compensation on a no-fault basis for work-related injury "as a fair exchange for relinquishing every other right of action against the employer." *Rudy v. McCloskey and Co.,* 348 Pa. 401, 35 A.2d 250, 253 (1944). From time to time, however, injured employees and their counsel have attempted ingeniously to accept the rewards of this no-fault compensation system and still avail themselves of a possible common law damages action against the employer or its insurer.

This case requires us to predict whether the Supreme Court of Pennsylvania would permit an injured employee to disregard the state statutory workmen's compensation scheme and bring a common law action in court if an employer's insurance company behaves egregiously in handling the underlying workmen's compensation claim. Because we hold that it would not, but would honor the exclusivity provisions of the Act, we affirm the order of the district court dismissing plaintiffs' suit.

## I.

Patricia Winterberg [1] (Winterberg) worked for a T.J. Maxx department store in Pennsylvania. In 1991, during the course of her employment, a clothing rack weighing several hundred pounds fell on her foot, causing a "severe contusion of bones." Winterberg received medical treatment, paid for by the T.J. Maxx compensation carrier, Transporta-

tion Insurance Company (hereafter "TIC" or "carrier"), trading as CNA Insurance.

Winterberg's injury and pain became progressively worse, and the doctors diagnosed her as having Reflex Sympathy Dystrophy ("RSD"). She claims that she suffers extraordinary pain and the loss of use of her left foot; that it has intensified, causing her to fall down frequently. These falls, she asserts, caused her to sustain other injuries, such as damage to the tendons of her ankle, and a fracture of her elbow, which also needed medical attention. A doctor prescribed a wheelchair because the elbow fracture made it impossible for her to use crutches. In addition, Winterberg states she underwent psychological counseling for pain management and depression.

In 1992, TIC stopped paying Winterberg's medical bills. It took the position that the only compensable injury she had suffered was her original foot injury, and refused to authorize the other prescribed medications, therapies, and rehabilitative services. TIC also attempted to terminate her workmen's compensation benefits on the grounds that T.J. Maxx had offered her a position she could perform even with her symptoms. Winterberg disputes that the job offered conforms to the "bona fide" requirements of the Compensation Act.

According to plaintiff,[2] defendant continued to deny her claims and refuse to pay her bills despite admonitions by the Workmen's Compensation Referee, approval of the expenses by two separate independent reviews, and numerous letters from plaintiff's counsel detailing the harmful impact of defendant's conduct on her. Apparently, plaintiff was terminated from some of her prescribed therapy because of her financial inability to pay for it, and this lack of therapy also aggravated her injury.

---

1. Winterberg's husband is also a plaintiff in this suit. His claims are all tangential to Winterberg's. He is suing for loss of consortium and companionship on the grounds of the separate tortious acts that Winterberg alleges. As he alleges no independent facts relevant to his causes of action, his claims are not discussed. Refer-

ences to "plaintiff" in this opinion include the husband's claims as well.

2. As this case comes to us on appeal from an order granting a motion to dismiss, the record is scant. For the purposes of review, we take all factual allegations of the plaintiff as true.

At the carrier's request, Winterberg underwent a medical examination by a neurologist of TIC's choosing. Plaintiff claims that during the examination, the neurologist, Dr. Bennett, emotionally and physically abused her. He asked her, "Did you settle your lawsuit?", roughly grabbed her foot immediately after being told that she suffered pain even from air blowing across it, and demanded that she walk. Plaintiff asserts that she became unsteady, and fell to the floor, injuring her head, shoulder and neck, but the doctor refused to assist her, saying "You are not an invalid and you have to get up yourself." Shortly after this medical examination, and because of her despondency over it, the denial of her benefits, and her pain and depression, Winterberg made an unsuccessful suicide attempt.

Winterberg and her husband filed this lawsuit in the Philadelphia Court of Common Pleas. They alleged that TIC had violated Pennsylvania's "bad faith" insurance statute, 42 Pa.C.S.A. § 8371 and the Unfair Trade Practices and Consumer Protection Law, 73 Pa.S. § 201–1, et seq., as well as having intentionally inflicted emotional distress, breached a contract likely to result in emotional distress, and engaged in common law fraud and deceit. Claiming diversity jurisdiction, the defendant removed the suit to the United States District Court for the Eastern District of Pennsylvania.

Defendants then filed a motion to dismiss based on the exclusivity jurisdiction of Pennsylvania Workmen's Compensation Act, 77 Pa.S. § 481(a). Under that Act, an employee may not sue an employer (or its insurer) at common law for an injury arising in the course of employment. TIC argues that all of plaintiff's claims have their fundament in the treatment of her workmen's compensation claim, and, therefore, the district court has no jurisdiction of this proceeding. On the other hand, plaintiff contends that the "bad faith" insurance statute superseded Pennsylvania's Workmen's Compensation Act and provides a concurrent action at common law in cases of a carrier's flagrant misconduct. Noting that the state Supreme Court had not spoken directly on the issue, the

district court determined that plaintiff's claims were all within the scope of the Act, and dismissed all claims against the insurance company.[3] The court held that the exclusivity provision of the Compensation Act barred the tort claims and that the "bad faith" statute, though enacted later, did not repeal the Act's exclusivity provision. Further, the court dismissed plaintiff's claim under the "bad faith" statute for lack of jurisdiction. Although the statute created a separate cause of action, the court determined that it could not be brought in a court which did not have jurisdiction of the underlying insurance claim.

The court did, however, allow plaintiff's claims arising from the tortious conduct that allegedly occurred during the medical examination conducted by Dr. Bennett. The court concluded that Dr. Bennett's alleged actions during that examination, if proven, would constitute a common-law tort such as battery. Such conduct constituted activity wholly separate from the handling of the compensation claim, and was not subsumed under the Compensation Act.

Plaintiff petitioned the court to certify the partial dismissal under 28 U.S.C. § 1292(b) to enable her to appeal from the interlocutory order. The court denied the request. At that point, plaintiff amended her complaint to drop the breach of contract claim only. Defendant moved to strike all references to the insurance company's conduct in the remaining portion of the complaint, and the court granted this motion. It ordered plaintiff to amend the complaint accordingly. Plaintiff, however, notified the court that she intended to stand on her complaint and not amend. The court therefore dismissed the complaint with prejudice. Plaintiff concedes that these actions have waived her right to proceed with any claim against Dr. Bennett. The order now being final, plaintiff appealed.

## II.

■ In the absence of any precedent of the Pennsylvania Supreme Court, we must predict how that court would decide this

---

3. The court also dismissed the count of the complaint for punitive damages, noting that it was a remedy and not a cause of action. However, the court gave the plaintiff leave to amend so that she might incorporate a punitive damages claim into her other causes of action.

**322**

issue. In so doing, we must also give due deference to decisions of the lower Pennsylvania courts. *See, City of Philadelphia v. Lead Industries Ass'n,* 994 F.2d 112 (3d Cir. 1993).

■ Pennsylvania's Workmen's Compensation scheme provides that it is the exclusive remedy available to employees against employers for work-related injuries:

> The liability of an employer under this act shall be exclusive and in the place of any and all other liability to such employes [sic] ... or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 Pa.S. § 481(a). The same exclusivity of remedy is applied in cases against an employer's insurer. See, 77 Pa.S. § 501 ("Such insurer shall assume the employer's liability hereunder and shall be entitled to all of the employer's immunities and protection hereunder ...").

This exclusivity of remedy has been described as a "historical *quid pro quo* employers received for being subjected to a no-fault system of compensation for worker injuries. That is, while the employer assumes liability without fault for a work-related injury, he is relieved of the possibility of a larger damage verdict in a common law action." *Kuney v. PMA Insurance Co.,* 525 Pa. 171, 578 A.2d 1285, 1286 (1990), quoting *Lewis v. School District of Philadelphia,* 517 Pa. 461, 538 A.2d 862, 867 (1988). Because of the historical background for Pennsylvania's workmen's compensation system, courts have been very cautious about permitting common law litigation in matters arguably connected with work-related injuries. *See, Kuney, supra* (granting immunity from tort action for workmen's compensation insurer despite its alleged fraudulent and deceitful conduct to deprive injured employees of their workmen's compensation benefits); *Shaffer v. Procter & Gamble,* 412 Pa.Super. 630, 604 A.2d 289 (1992) *app. denied,* 532 Pa. 665, 616 A.2d 986 (1992) (Workmen's Compensation Act precluded intentional infliction of emotional distress claim based on employer's harassment of injured employee in connec-

tion with treating the injury); *Wilson v. Asten–Hill Mfg. Co.,* 791 F.2d 30 (3d Cir.1986) (employer's withholding of information regarding the danger of working conditions did not state a cause of action excepted from the workmen's compensation exclusivity provision).

■ Recently, however, the Pennsylvania Supreme Court carved out a narrow exception to this exclusivity provision. In *Martin v. Lancaster Battery Co., Inc.,* 530 Pa. 11, 606 A.2d 444 (1992), federal law required the plaintiff's employer to test its employees for lead content in their blood. The employer withheld the results of plaintiff's blood tests, and intentionally altered blood test results in order to conceal from the plaintiff his lead toxicity. *Id.,* at 446. By the time the plaintiff discovered it, his condition was substantially worse than it would have been had the discovery not been delayed by his employer's intentional conduct. *Id.*

The Pennsylvania Supreme Court held that the plaintiff could bring his action in the state courts, regardless of the exclusivity provisions of the Workmen's Compensation Act. In so holding, the court concluded that the Pennsylvania legislature "could not have intended to insulate employers from liability for the type of flagrant misconduct at issue herein by limiting liability to coverage provided by the Workmen's Compensation Act." *Martin,* 606 A.2d at 448. The court characterized this misconduct as beyond the scope of the risk an employee should have to assume. In this way, the court distinguished between actions where employers actively misled already ill employees, and actions where employers tolerate unsafe workplace conditions. *Id.* The latter, even if employers deliberately mislead third persons such as state inspectors, are actions limited by the Workmen's Compensation Act. *See,* e.g., *Poyser v. Newman,* 514 Pa. 32, 522 A.2d 548 (1987) (where employer falsified reports to third persons to prevent detection of unsafe working conditions, employee's remedy for injury was limited to Workmen's Compensation Act).

Plaintiff here has tried to characterize *Martin* as carving out an exception to the

exclusivity rule whenever there is egregious and flagrant misconduct of the employer or its insurer. This is not an appropriate and objective reading. Most of the above cited cases also involve egregious and offensive behavior on the part of employers or their insurers. Yet they were all limited to the workmen's compensation forum. If an allegation of "flagrant misconduct" or "bad faith" becomes the talisman by which a plaintiff gains access to a common law jury and escapes the exclusivity provisions of the Act, then Pennsylvania's workmen's compensation scheme runs the risk of dismantlement. The Act contains its own schedule of penalties for improper treatment. of a worker's claim by the compensation carrier. 77 Pa.S. §§ 717.1, 991. Plaintiff's argument that these penalties (of ten to twenty percent of the total award) are inadequate is one to be presented to the state legislature rather than a federal court.

Plaintiff also contends that *Martin* creates an exception to the exclusivity provision whenever misconduct aggravates a pre-existing injury. There is language in *Martin* that might support such an interpretation. The court noted, "[t]he employee herein has alleged fraudulent misrepresentation on the part of his employer as causing the delay which aggravated a work-related injury. He is not seeking compensation for the work-related injury itself in this action." *Martin*, 606 A.2d at 447. This interpretation, however, is inconsistent with *Kuney*, which is not even mentioned in *Martin*. Certainly if the Pennsylvania Supreme Court had meant to overrule *Kuney*, they would have done so expressly. Therefore, we must read the language consistent with *Kuney*, if possible. Under that reading, *Martin* is more accurately characterized as a decision which permits a tort action for deliberate conduct which aggravates a pre-existing injury **before** such injury is adjudicated under the Workmen's Compensation Act. Aggravating conduct during the time of the adjudication is adequately covered under the Act. *See, Kuney*, 578 A.2d at 1287 (noting that the Act provides for ten percent interest on unpaid benefits, as well as for penalties for violations of the Act from ten to twenty percent, 77 Pa.S. §§ 717.1, 991).

This reading of *Martin* is reinforced by the opinion in *Santiago v. Pennsylvania Nat'l Mutual Casualty Ins. Co.*, 418 Pa.Super. 178, 613 A.2d 1235 (1992). *Santiago* is remarkably similar to the allegations in this case. The claimant also developed RSD as a result of a work-related injury, also had his claims denied, and also attempted suicide as a result of depression brought on by the bad faith of the insurance company. The court held that *Kuney* governed Santiago's claim, and not *Martin*:

> We interpret our supreme court's holding in *Martin* ... as allowing a limited exception to the application of the exclusivity provisions of the Act. We are reluctant, however to extend that exception to the circumstances of this case. [In *Martin* ], the employer concealed, altered or intentionally misrepresented information related to the work-related injury which resulted in aggravation of that injury. [The case did not] concern[ ] the improper handling of the claim on the part of the employer's carrier, as was the case here and in *Alston* [*v. St. Paul Ins. Companies*, 389 Pa.Super. 396, 401, 567 A.2d 663, 666 (1989) ], supra. This too, was the case in *Kuney* ...

*Santiago*, at 1241.

We note the plaintiff in *Santiago* predicated his claim on an isolated incident in connection with negotiations for a lump sum settlement. In contrast, the claim in the present case is based on what plaintiff characterizes as a long pattern of "brutal deprivation." However, this does not distinguish *Santiago*. Both cases center on a compensation carrier's discharge of a workman's compensation claim. The level of misconduct in the payment of that claim is relevant to the amount of damages a workman's compensation judge may assess.

■ *Santiago* is a recent case from the Pennsylvania intermediate appellate court. In predicting how the state supreme court would rule on the issue, this court should give the intermediate appellate court decisions "substantial weight in the absence of an indication that the highest state court would rule otherwise." *City of Philadelphia v. Lead Industries Ass'n.*, 994 F.2d 112, 123 (3d

Cir.1993). *Santiago* is an opinion written by Judge Cirillo, the former chief of the court, and another former chief judge of the court also served on the panel. The opinion is well-reasoned, and we believe that the state supreme court would not disagree with *Santiago's* interpretation of *Kuney* and *Martin*. We therefore conclude that the Pennsylvania supreme court would bar plaintiff's claims in this action because of the exclusivity provisions of the Workmen's Compensation Act.

### III.

■ We next address plaintiff's claims under Pennsylvania's "bad faith" Act, 42 Pa. C.S.A. § 8371. Plaintiff argues that the district court also erred in ruling that this statute did not supersede the earlier-enacted exclusivity provisions of the Workmen's Compensation Act.

In 1990, the Pennsylvania legislature enacted 42 Pa.C.S.A. § 8371, entitled "Actions on Insurance Policies." The statute provides in pertinent part for penalties and punitive damages against an insurer, in an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured.

Accordingly, Winterberg included a claim for bad faith in this action. In dismissing this claim, the district court held that § 8371 does not supersede the exclusivity provisions of the Workmen's Compensation Act. The cause of action which the "bad faith" statute creates is inapplicable to insurance claims where jurisdiction over them is vested somewhere other than the state courts. We apply Pennsylvania's rules of statutory construction to resolve the apparent facial conflict between the two statutes.

In Pennsylvania, conflicting provisions of statutes should be construed so as to give effect to both, if possible. If the two are irreconcilable, however, the specific provisions shall prevail over general provisions. This is true unless the general provision was (1) enacted later, and (2) manifestly intended to prevail over the earlier specific provision. See, 1 Pa.C.S.A. § 1933. The first step, then, is to see if provisions of the "bad faith" statute and the exclusivity provisions of the

Workmen's Compensation system can be reconciled.

In *Okkerse by Okkerse v. Prudential Property & Casualty Ins. Co.*, 425 Pa.Super. 396, 625 A.2d 663 (1993), the Superior Court held that the interest and attorney's fees recoverable under § 8371 were not necessarily irreconcilable with those recoverable under Pennsylvania's No–Fault Insurance Act, 40 Pa.S. §§ 1009.101—1009.701 (repealed effective October 1, 1984). Each provided the same penalties, for slightly different levels of fault on the part of the insurer. *Id.*, at 667. The court construed the provisions together, at least to survive the insurer's motion to dismiss. However, the court also recognized that "potential for conflict may occur if appellee is entitled to the same damages under both provisions." *Id.*

In this case, the damages are different under the two statutes. In addition the conflict here is not merely between inconsistent remedies but more importantly, involves a function of jurisdiction. Under the Compensation Act, referees appointed by the State Secretary of Labor, 71 Pa.S. § 152 are empowered to hear workmen's compensation claims, 71 Pa.S. § 152. They have no authority to hear actions brought under the "bad faith" statute, which plainly refers to actions "arising under an insurance policy [when] the *court* finds the insurer has acted in bad faith toward the insured." The language of the statute focuses on suits in courts of law based on *insurance policies,* not workmen's compensation claims. Therefore, *Okkerse* is not an apt precedent. The conflict here is greater than inconsistent remedies. The entire basis of the workmen's compensation scheme is the immunity of the employer and its insurer from tort suits. The two statutes are logically and pragmatically irreconcilable.

Moreover, the "specific over general" rule, that determines which of two inconsistent statutory provisions should take precedence, supports our view. Specific provisions prevail over general in most cases. 1 Pa.C.S.A. § 1933. The workmen's compensation exclusivity provision is the more specific of the two provisions. *See, Okkerse,* supra, at 666–67. The bad faith statute is applicable in "an

action arising under an insurance policy" while the exclusivity provision is applicable only in actions by an employee arising under the Workmen's Compensation Act against an employer.[4] *See, also, Henry v. Twin City Fire Insurance Co.,* 1992 WL 129619 (E.D.Pa.1992) (unreported decision) (the general statutory penalties for an insurer's bad faith do not apply where the legislature has enacted the more specific remedy of workmen's compensation).

Legislative intent to supersede or alter the exclusivity provision of Pennsylvania's workmen's compensation scheme should be more clearly manifested than the boilerplate repealer language of § 8371 if it is intended to make such a dramatic and significant change in an important and well-established compensation scheme, affecting great numbers of employees and their families, as is urged by plaintiff. Allowing a bad faith action to proceed in the courts would fundamentally change the statutory scheme of Pennsylvania's workmen's compensation laws. It carves out an exception which may swallow the rule. As the law now stands, employees receive benefits without having to prove fault on the part of the employer. Plaintiff would expand a no-fault system in to one which would obligate employers to compensate employees for injuries under the workmen's compensation law and also subject employers to tort suits at common law if they act with fault. Such a holding turns the legislative program of Pennsylvania's workmen's compensation on its head. The legislature would need to be very specific about such an intent; the repealer provision of the bad faith statute is indeed a slender reed to lean on for such far-reaching consequences.

Our holding that § 8371 was not intended to supersede the Workmen's Compensation Act is not inconsistent with the decision in *Okkerse,* supra. *Okkerse* held that, to the extent that the old no-fault provision under which the plaintiff had sued and the newly-enacted "bad faith" statute conflicted, the "bad faith" statute should prevail. In so doing, the *Okkerse* court relied on the repealer provision in § 8371, which reads: "All other acts and parts of acts are repealed so far as they are inconsistent with this act."

However, § 8371 was enacted concurrently, and as part of **the same bill** that enacted the new No–Fault Insurance Act. *See,* Act of February 7, 1990, No. 6, enacting HB 121.[5] Therefore, it is unsurprising that the *Okkerse* court should hold that § 8371 was intended to prevail over inconsistent provisions of an act that had just been superseded. Moreover, the court limited its ruling "to the extent that both provisions are determined to apply *in this action* and result in a different calculation of interest and attorney's fees, the two statutes will be in conflict." *Id.,* at 667 (emphasis ours). Finally, over two years have elapsed since the *Okkerse* decision, and Pennsylvania's traditional workmen's compensation scheme has continued to function without change or legislative alteration. We see nothing in *Okkerse* that persuades us that the court contemplated any change in the workmen's compensation scheme, let alone one so fundamental. We therefore hold that Pennsylvania's workmen's compensation scheme has not been superseded by the enactment of § 8371.

### IV.

Nor does § 8371 permit a separate, concurrent action on the handling of workmen's

---

**4.** A workmen's compensation claim is not "based on an insurance policy" within the meaning of § 8371. The claim is statutory and has its genesis in the contract of hire between the employer and employee, *see,* 77 Pa.S. § 431, not an insurance contract. The employer's obligation to pay for a compensable injury is not predicated on an insurance policy. In the instant case, TIC is the employer's compensation carrier and no suit is pending between them.

**5.** Some commentators believe that § 8371 was enacted as a delayed response to *D'Ambrosio v.*

*Pennsylvania Nat'l Mutual Casualty Ins. Co.,* 494 Pa. 501, 431 A.2d 966 (1981). *See, e.g.,* Oberdorf, "Bad Faith Insurance Litigation in Pennsylvania: Recurring Issues Under Section 8371," 33 Duquesne Law Review 451, 452 (1995). The *D'Ambrosio* court refused to judicially create a "bad faith" cause of action for a plaintiff whose insurance company refused to pay a claim for loss of his boat. The court held that the exclusive remedy was under the Pennsylvania Unfair Insurance Practices Act.

compensation claims. The provision appears to provide remedies in "any claim arising under an insurance policy." It is unclear from this language whether § 8371 is merely another count for relief, or if it gives rise to a cause of action separate from litigation on the insurance claim itself. Pennsylvania case law shows an intent to allow a separate action on the "bad faith" statute. However, to the extent that this is true, it is in conflict with the intent of the Workmen's Compensation Act. Section 8371 may create an independent cause of action. Such cause of action, however, is inapplicable in the workmen's compensation context.

The bad faith statute has been held to permit a number of actions in cases where the policy claim was not or could not be brought. In *March v. Paradise Mutual Ins. Co.*, 435 Pa.Super. 597, 646 A.2d 1254 (1994), the court permitted an insured to sue for bad faith handling of an insurance claim, even though the action on the claim itself would be barred by the statute of limitation. *Accord, Margolies v. State Farm Fire and Cas. Co.*, 810 F.Supp. 637 (E.D.Pa.1992). This does show that § 8371 creates a cause of action that exists separately and independently from a claim on the insurance contract itself. *See, Romano v. Nationwide Mut. Fire Ins. Co.*, 435 Pa.Super. 545, 646 A.2d 1228, 1231 (1994).[6]

However, disregarding these procedural limitations to underlying claims is quite different than disregarding jurisdictional limitations. Our court has recently faced a similar issue in *Gemini Physical Therapy v. State Farm Mut. Auto. Ins. Co.*, 40 F.3d 63 (3d Cir.1994), *rehearing denied* (1994). In that case, we held that remedies under the general bad faith insurance statute are not available in claims arising from automobile accident injuries. This court predicted that the

Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL) provided an exclusive first-party remedy for bad faith denials by insurers. Using the rules of statutory construction, this Court found that MVFRL was intended to be a singularly specific exception to the general bad faith provisions. We now construe Pennsylvania's Workmen's Compensation Act in the same way. Therefore, although § 8371 may create an independent cause of action, this cause of action does not supersede statutes already enacted containing exclusive remedies.

### V.

In summary, the district court committed no error in dismissing plaintiff's complaint against the defendant. The claims asserted are within the exclusive jurisdiction of the workmen's compensation scheme. Accordingly, the district court's order of dismissal will be affirmed.

---

**6.** Appellants argue that *Romano* is controlling on the issue of jurisdiction. In that case, an insured brought suit to enforce a judgment by an umpire. It included in this suit a claim for attorney's fees under § 8371 because refusal to pay such award constitutes bad faith under the Unfair Insurance Practices Act (UIPA). Jurisdiction for UIPA violations is not vested in the courts. The decision in *Romano* focused on whether courts could apply UIPA standards in determining bad faith under § 8371. The suit, however, was not under

UIPA, but to enforce an arbitration award. Similarly, if plaintiffs in this case receive an award from the Workmen's compensation judge, and need to enforce such award in this court, they could bring a bad faith claim for the insurer's conduct in refusing to pay monies **already awarded by the Workmen's compensation judge.** *Romano* does not, however, confer jurisdiction over bad faith in actions that could not be brought in that court.