**Patricia WINTERBERG and James Winterberg**

v.

**CNA INSURANCE CO.**

**Civ. A. No. 94–CV–5406.**

United States District Court, E.D. Pennsylvania.

Oct. 25, 1994.

James T. Vernile, Philadelphia, PA, for plaintiffs.

Leslie Martinelli Cyr, Susan Silverman Reichelson, La Brum and Doak, Philadelphia, PA, for defendant.

### MEMORANDUM

CAHN, Chief Judge.

Patricia Winterberg ("plaintiff" or "Winterberg") and James Winterberg (collectively, "plaintiffs") have brought this action against CNA Insurance Company ("defendant" or "TIC"[1]). Plaintiff complains that defendant's conduct in response to a work-related accident violated her common law rights as well as her rights under state insurance and trade statutes. Currently before this court is defendant's Motion to Dismiss Plaintiffs' Complaint Pursuant to Federal Rule of Civil Procedure 12(b). This court has jurisdiction over this diversity action pursuant to 28 U.S.C. § 1332.

## I. BACKGROUND

A summary of the facts as alleged is as follows. Winterberg was an assistant store manager at T.J. Maxx, a department store. On February 12, 1991, a heavy clothing rack fell on her left foot, causing a "severe contusion of bones." Plaintiffs' Complaint ¶ 7. Winterberg was immediately treated in an emergency room, and she came under the care of orthopedic and other specialists in the following months.

Physicians treating Winterberg diagnosed her as having Reflex Sympathetic Dystrophy ("RSD"), characterized by extraordinary pain and the loss of functional use of her left foot. This condition subsequently intensified, causing Winterberg frequently to fall down because of the weakness and pain in her leg.

---

**1.** Defendant claims that its actual name is "Transportation Insurance Company." Plain- tiffs' mistake in nomenclature will be discussed *infra*.

These falls led to further complications, such as tendon and ligament damage to her ankle and a fracture of her elbow, and emergency medical care for these injuries. Winterberg now must use a wheelchair. Her physicians have prescribed water therapy to alleviate the severity of pain from the RSD, and have directed her to obtain psychological counseling for pain management and depression.

TIC wrote the insurance policy under which T.J. Maxx was insured. TIC began to make worker's compensation payments to Winterberg and to reimburse her medical expenses. In 1992, however, TIC retreated markedly from this course of action. Despite the fact that Winterberg's physicians unanimously agreed that she had RSD and was suffering from consequent emotional and physical problems requiring medical care, TIC refused to pay for any medical expenses beyond those of the primary physician responsible for treatment of Winterberg's initial foot injury. TIC has persisted with this policy despite the oral admonition of the Workmen's Compensation Judge, the findings of two independent utilization reviews approving the ancillary medical expenses, and multiple letters from counsel warning TIC of the harmful physical and psychological impact on Winterberg of being unable to pay for necessary treatment.

In addition to its refusal to pay for Winterberg's medical treatment, TIC petitioned to terminate her workers' compensation benefits, claiming that she was fit to return to a job at T.J. Maxx. Plaintiffs claim that TIC filed its petition with the knowledge that no such job existed at T.J. Maxx, that no effort had been made to develop any position that could be performed by a person experiencing plaintiff's symptoms, and that the job offer made by T.J. Maxx failed to conform to the Pennsylvania Worker's Compensation Act's requirements which allow for the termination of worker's compensation benefits when a bona fide job offer has been made.

On September 27, 1993, at the request of TIC, Winterberg was examined by Richard Bennett, M.D., a neurologist engaged by TIC. During this examination, which was prior to the initiation of the present litigation, Dr. Bennett asked Winterberg, "Did you settle your lawsuit?" He forcefully grabbed Winterberg's left foot immediately after she told him that she could not tolerate even the light pressure of air blowing across the injury site. He demanded that she attempt to walk, and refused to come to her aid both when she became unsteady and after she fell hard on to the floor. He told her, "I am not going to help you up. You are not an invalid and you have to get up yourself." Winterberg suffered chin, neck, and head injuries from the fall.

On October 5, 1993, Winterberg testified at her worker's compensation hearing. On October 8, 1993, distraught over Dr. Bennett's examination, the prospect of losing her only source of financial support, and the belief that she was a burden to her husband and children, Winterberg made an unsuccessful suicide attempt.

Plaintiff filed a complaint in the Philadelphia Court of Common Pleas, claiming that defendant violated 42 Pa.C.S.A. § 8371, and the Unfair Trade Practices and Consumer Protection Law, 73 Pa.S.A. § 201–1. Plaintiff also makes claims for the intentional infliction of emotional distress, the intentional breach of contract likely to result in emotional distress, and common law fraud and deceit. James Winterberg sues for loss consortium.

Defendant removed this case to federal court based on the diversity of citizenship between the parties.[2] Defendant now responds to the complaint with motions to dismiss based upon lack of personal jurisdiction and failure to state a claim upon which relief may be granted.

## II. DISCUSSION

### A. Personal Jurisdiction

Defendant contends that the complaint must be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2) because this court lacks personal jurisdiction. Plaintiff's com-

---

**2.** Transportation Insurance Company is incorporated and has its principal place of business in Illinois.

plaint names as defendant "CNA Insurance Company." However, there does not exist a corporation or other legal entity by this name. Rather, a corporation by the name of "Transportation Insurance Company" wrote and implemented the compensation policy under which Winterberg was insured. Therefore, plaintiff has failed to name the appropriate party.

 Federal Rule of Civil Procedure 15(a) permits the court to grant leave to amend a pleading, and "leave shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). This rule has been applied in a "liberal manner." *Sechrist v. Palshook*, 97 F.Supp. 505, 506 (D.Pa.1951). Thus, leave to amend should be denied only in a narrow set circumstances. *Ynclan v. Dept. of Air Force*, 943 F.2d 1388 (5th Cir.1991).

 The most common of these circumstances are "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). None of these circumstances exist in this case. Plaintiff named "CNA Insurance Company" as defendant in good faith, and for good reason. Defendant called itself "CNA" throughout the workers' compensation proceedings, and issued checks and letterhead in that name. *See* Plaintiffs' Answer to Defen-

dant's Motion to Dismiss, Exhibits B–D.[3] It was never brought to plaintiff's attention during pre-litigation communications that she was using the wrong name. In short, plaintiff made an honest mistake.

Furthermore, defendant has not been prejudiced by the misnomer.[4] Transportation Insurance Company received actual, timely notice of the suit, and has not otherwise been harmed by the mistake in nomenclature. Liberal use of amendment is appropriate under these circumstances. *See, e.g., Shoap v. Kiwi S.A.*, 149 F.R.D. 509, 511–12 (M.D.Pa. 1993); *Sechrist*, 97 F.Supp. at 507 ("[T]o hold otherwise would be unfair to Plaintiff and would allow the Defendant to avoid his rightful obligation through a technical error … where the Defendant has had notice of the Plaintiff's claim from the outset.")

 Amendment is particularly warranted where the proper defendant is itself responsible for plaintiff's mistake as to its identity. *See, e.g., Shoap*, 149 F.R.D. at 512; *Sorrels v. Sears, Roebuck & Co.*, 84 F.R.D. 663, 666–67 (D.Del.1979).[5] Transportation Insurance Company made no attempt to correct a mistake that was known to them. When they filed suit, plaintiff reasonably believed that "CNA Insurance Company" was the correct name. Given TIC's role in the error, it would be unreasonable, and unjust, to throw plaintiff out of court. Accordingly, the court will deny defendant's Motion to Dismiss for lack of personal jurisdiction.[6]

---

3. In fact, the only reference to "Transportation Insurance Company" was in a list of insurance companies in the heading of a check made payable to counsel for plaintiff. Next to this list in large, block print is the name "CNA." *See Id.* at Exhibit C.

4. In some situations, particularly where the statute of limitations is applicable, it makes a difference whether the complaint simply misnames the correct party or rather names the wrong party. *See Sechrist*, 97 F.Supp. at 506. The "misnomer" test is "whether it is reasonable to conclude that plaintiff had in mind the proper entity or person, merely made a mistake as to the name and actually served the entity or person intended; or whether the plaintiff actually meant to serve and sue a different person." *Munetz v. Eaton Yale and Towne, Inc.*, 57 F.R.D. 476, 479 (E.D.Pa.1973). It is reasonable to conclude that Winterberg meant to sue the insurance company

with whom she was dealing, namely the Transportation Insurance Company. It was this company that was served.

5. *See also* Fed.R.Civ.P. 15(c) (amendment to correct the name of a Defendant will relate back to the date of the original pleading where the correct party defendant had actual notice of the suit and "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.")

6. The court has begun to look beyond the pleadings in deciding the motion to dismiss for lack of personal jurisdiction. In deciding a motion to dismiss for *failure to state a claim*, a court must treat the motion as one for summary judgment if it looks beyond the pleadings. *See Boyle v. Governor's Veterans Outreach and Assistance Center*, 925 F.2d 71, 74 (3d Cir.1991). In light of this

### B. 12(b)(6)—Failure to State a Claim

#### 1. Legal Standard

■■■■ Defendant also moves to dismiss this case pursuant to Federal Rule of Civil Procedure 12(b)(6). The purpose of a 12(b)(6) motion is to test the legal sufficiency of a complaint. *Brown v. Hammond,* 810 F.Supp. 644, 645 (E.D.Pa.1993). In deciding a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), "all facts alleged in the complaint and all reasonable inferences that can be drawn from them must be accepted as true." *Malia v. General Electric Company,* 23 F.3d 828, 830 (3d Cir.1994). The complaint should not be dismissed unless the plaintiff alleges "no set of facts in support of the claim that would entitle him to relief." *ALA, Inc. v. CCAIR, Inc.,* 29 F.3d 855, 859 (3d Cir.1994).

#### 2. Workmen's Compensation Act

Defendant contends that plaintiff's complaint pertains to a worker's compensation claim and so must be brought under the Pennsylvania Worker's Compensation Act.[7] Title 77 Pa.S.A. § 481(a) (the "exclusivity provision") provides:

> The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband, or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section [411(1) & (2) ] or occupational disease as defined in section [27.1].

The Act further defines "injury" as "an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury." 77 Pa.S.A. § 411(1).

The Pennsylvania Supreme Court has noted that the exclusivity provision "is a version of the historical quid pro quo employers received for being subjected to a no-fault system of compensation for worker injuries. That is, while the employer assumes liability without fault for a work-related injury, [it] is relieved of the possibility of a larger damage verdict in a common law action." *Lewis v. School Dist. of Philadelphia,* 517 Pa. 461, 538 A.2d 862, 867 (1988). This bargain applies equally to the workmen's compensation insurance carrier, who is entitled to the same immunity from tort action as the employer. "Such insurer shall assume the employer's liability hereunder and shall be entitled to all of the employer's immunities and protection hereunder. . . ." 77 Pa.S.A. § 501.

Defendant contends that the exclusivity provision applies to its handling of plaintiff's worker's compensation claims since "[t]he acts of Transportation Insurance Company are . . . dependent upon and completely intertwined with [plaintiff's] work related injury." Brief for Defendant at 3. Plaintiff argues that the defendant's acts fall outside the provision and so are not immune from private suit.

■■■■ The Pennsylvania Supreme Court[8] has granted the exclusion from private suit to employers and insurance carriers who negligently cause an injury. *Scott v. C.E. Powell Coal Co.,* 402 Pa. 73, 166 A.2d 31 (1960) (exclusivity provision denied recovery against

---

rule, the court simply notes that defendant may raise the personal jurisdiction issue anew in a summary judgment motion if it wishes to present additional material for the court's consideration.

7. Defendant argues that the court thereby lacks "subject matter" jurisdiction under Fed.R.Civ.P. 12(b)(1). However, defendant's argument is more properly classified as part of its Fed. R.Civ.P. 12(b)(6) Motion to Dismiss for failure to state a claim upon which relief may be granted. *See Growth Horizons, Inc. v. Delaware County,* 983 F.2d 1277 (3d Cir.1993). Accordingly, the court will use the 12(b)(6) classification in its Order.

8. Because this is a diversity case, the federal court must apply the substantive law of the state where it sits. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Thus, this court will consider decisions of the Pennsylvania courts and accept decisions rendered by the Pennsylvania Supreme Court as the ultimate authority. *Ciccarelli v. Carey Canadian Mines, Ltd.,* 757 F.2d 548, 553 n. 3 (3d Cir.1985); *Williams v. State Farm Mutual Automobile Ins. Co.,* 763 F.Supp. 121, 123 (E.D.Pa.1991).

an employer for injury resulting in loss of taste and smell); *Tsarnas v. Jones & Laughlin Steel Corp.*, 488 Pa. 513, 412 A.2d 1094, 1097 (1980) (purpose of legislation was to close to employees "any recourse against the employer in tort for negligence"); *Jadosh v. Goeringer*, 442 Pa. 451, 275 A.2d 58 (1971) (worker's compensation carrier who negligently failed to warn of unsafe work conditions was not liable for injuries sustained by employee).

The court also has extended the exclusion where an employer's intentional wrongdoing has allegedly caused an employee's injuries. *Poyser v. Newman & Co.*, 514 Pa. 32, 522 A.2d 548 (1987) (employer alleged to have deliberately disregarded safety regulations and exposed employee to known hazard is protected from personal injury suit by exclusivity provision of Workmen's Compensation Act).

Moreover, it has applied the exclusion to intentional wrongdoing by the insurance carrier and its agents in the withholding of compensation benefits. *Kuney v. PMA Insurance Co.*, 525 Pa. 171, 578 A.2d 1285 (1990); *Alston v. St. Paul Ins. Cos.*, 531 Pa. 261, 612 A.2d 421 (1992).[9] In *Kuney,* an employee who had been injured on the job alleged that his employer's compensation insurance carrier refused to pay any benefits despite its knowledge that he was clearly entitled to some compensation. The court

held that an insurance carrier who has engaged in fraud and deceit to deprive an injured employee of his worker's compensation benefits is protected from tort actions by the Workmen's Compensation Act. It reasoned that "inasmuch as the appellee's claim is ultimately based upon an injury compensable under the [Act], he is limited to the remedies provided within the framework of the Act." 578 A.2d at 1288.[10]

In *Alston*, an injured employee alleged that agents of the employer's insurance carrier—including a physician—acted maliciously and fraudulently in not informing him of his rights, in adopting an "aggressive approach" towards him, in giving inaccurate diagnoses and filing false affidavits concerning his ability to work, and in filing a petition to terminate benefits after he rejected a settlement offer. Finding *Kuney* dispositive, the court held that a suit in tort was prohibited:

> "[T]he crux of the Alstons' lawsuit is that the insurance carrier and its agents wrongfully delayed the receipt of compensation benefits. The Workmen's Compensation Act establishes the exclusive forum for resolving disputes regarding the employee's right to compensation and the delay or discontinuance of benefits."

*Id.* 531 Pa. at 268, 612 A.2d 421.[11]

However, other cases decided by the Pennsylvania courts demonstrate that the exclu-

---

**9.** *See also Rosipal v. Montgomery Ward,* 360 Pa.Super. 570, 521 A.2d 49 (1987) (employer who allegedly terminated employee's worker's compensation benefits in order to cause her severe emotional distress was protected from suit in tort by exclusivity provision of Workmen's Compensation Act).

**10.** The *Kuney* court noted that to permit the appellee to bring a tort action would be inconsistent with the Workmen's Compensation Act's comprehensive system for adjudicating worker's compensation disputes, including remedies for the alleged injury in question. 578 A.2d at 1286–87. For example, the statute provides for attorneys fees and costs to be assessed against an insurer which contests a compensation claim without reasonable basis. 77 Pa.S.A. § 996. The Act further provides interest on due and unpaid compensation. 77 Pa.S.A. § 717.1.

The *Kuney* court also pointed out that it was fruitless for the appellee to argue that he would not receive full indemnification for his injuries. The Act itself was designed to limit a worker's

recovery to the statutory scheme of damages, despite the fact that he or she might have received more in a tort action. *Id.* 578 A.2d at 1287.

**11.** Here, defendant claims that Dr. Bennett was not acting as defendant's "agent." In *Alston,* the plaintiff attempted to avoid the exclusive remedy provision of the Workmen's Compensation Act on grounds that the doctors and the rehabilitation service retained by the defendant insurer were not "insurers" within the meaning of 77 Pa.S.A. § 501. The supreme court squarely rejected this argument: "This attempted distinction blatantly disregards the agency relationship existing between the insurance carrier and the vocational rehabilitation service and physician." *Id.* 612 A.2d at 425. Defendant's claim that *Alston* is distinguishable because Dr. Bennett performed only one, "independent" examination is unpersuasive. The *Alston* court's holding applied equally to Dr. Williams, an apparently independent physician who performed only one examination on Alston.

**720**

sivity provision of the Workmen's Compensation Act does have limits. In *Tropiano v. Travelers Ins. Co.*, 455 Pa. 360, 319 A.2d 426 (1974), an employee who had been injured on the job was allegedly injured by negligent medical treatment supplied by the employee's worker's compensation carrier. The supreme court held that the compensation carrier was not immune from liability under such circumstances. It questioned whether "the injuries for which appellant seeks recovery herein [arose] during the course of his employment because only for those injuries does an employer receive immunity under the act." *Id.* 319 A.2d at 427. The court answered this question in the negative, finding that "[t]he medical treatment of injuries is a separate and distinct function of the insurance carrier." *Id.*

The superior court made a similar finding in *Taras v. Wausau Ins. Cos.*, 412 Pa.Super. 37, 602 A.2d 882 (1992). In *Taras*, a physician, acting as the agent of an injured employee's workmen's compensation insurance carrier, negligently decided to perform electro-convulsive therapy on the employee. The court held that the resulting injuries were not compensable under the Act: "Taras seeks redress for a separate, non-work related injury. Therefore, Taras is not limited to the remedies provided within the framework of the Act." *Id.* 602 A.2d at 886.

Most recently, in *Martin v. Lancaster Battery Co.*, 530 Pa. 11, 606 A.2d 444 (1992), the supreme court held that an action against an employer for fraudulent misrepresentation was not barred by the Workmen's Compensation Act. Lancaster Battery Company tested all employees exposed to lead in the course of their employment for lead content in their blood. The company intentionally disclosed falsified test results to Martin, an employee, for over three years. Martin was later diagnosed with several conditions that would not have been as severe had he received the true results of the tests. The court reasoned that "[c]learly, when the Leg-

islature enacted the Workmen's Compensation Act in this Commonwealth, it could not have intended to insulate employers from liability for the type of flagrant misconduct at issue herein by limiting liability to the coverage provided by the Workmen's Compensation Act."

### 3. Acts of defendant

The question for this court is whether defendant's alleged acts fall outside of the exclusivity provision of the Workmen's Compensation Act. Because the court finds meaningful distinctions between defendant's refusal to pay benefits and the examination by Dr. Bennett, it will treat these activities separately.

#### a. Refusal to pay benefits

Defendant's refusal to pay benefits despite its knowledge that such payment was warranted appears to fall squarely under *Kuney* and *Alston*. As in those cases, plaintiff has alleged that the worker's compensation insurance carrier has fraudulently delayed and discontinued payment of benefits for a work-related injury. *Kuney* and *Alston* make clear that this type of wrongdoing may only be remedied under the Workmen's Compensation Act.

However, one feature of plaintiff's complaint distinguishes it from *Kuney* and *Alston*. Plaintiff alleges that the delay of necessary treatment not only deprived her of compensation benefits, but also *aggravated* her original injury. Specifically, plaintiff claims that she has experienced the increased intensity and spreading of the RSD physical symptoms, as well as the exacerbation of the RSD psychiatric symptoms ultimately leading to her suicide attempt. *See* Plaintiffs' Complaint ¶ 20.

This distinction deserves exploration. Aggravation of the original work-related injury—aggravation which was caused by a delay in ameliorative treatment—was recognized and held to be compensable in *Martin.*[12]

---

**12.** In *Taras*, aggravation of an injury was also held to be compensable. The electro-convulsive therapy aggravated Taras' Post–Traumatic Stress Disorder (PTSD). However, the court pointed out that this PTSD had its origins in Taras' involvement in Vietnam, and was then exacerbat-

ed by his work-related injury. 602 A.2d at 887–88. Thus, the court's conclusion that the harm suffered by Taras from the electric shock was a "non-work related injury" is of questionable relevance here, since it is undisputed that Winter-

Moreover, some language in *Martin* suggests that such aggravation might take an insurance carrier's acts outside the Workmen's Compensation Act, even if this aggravation came about merely by the delay of benefits: "The employee herein has alleged fraudulent misrepresentation on the part of his employer as causing the delay which aggravated a work-related injury. *He is not seeking compensation for the work-related injury itself in this action.*" 606 A.2d at 447 (emphasis added).

Indeed, it is difficult to appreciate a difference in legal effect between (1) an insurance carrier lying to an injured employee about his condition, thus causing the condition to worsen; and (2) an insurance carrier denying urgently needed benefits to a seriously injured employee whom it knows is entitled to such benefits, thus causing the injury to worsen. In other words, the aggravation of Winterberg's injuries, like that in Martin, does not seem to be an injury that "naturally results from" the original injury. 77 Pa.S.A. § 411(1).

However, in *Santiago v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 418 Pa.Super. 178, 613 A.2d 1235 (1992), the superior court gave no special effect to the aggravation of a work-related injury. Santiago developed RSD as a result of his injury. He alleged that because the worker's compensation insurance carrier fraudulently withheld benefits and otherwise fraudulently handled his claim, his RSD was exacerbated. This led to a suicide attempt.

The court held that Santiago's common law claims were barred under the exclusivity provision of the Workmen's Compensation Act. Focusing on the interplay between the conduct of the insurance carrier and the *original* injury, not the aggravation of that injury, the court found that the case was "factually and legally distinguishable from *Martin, Tropiano,* and *Taras,* and ... reconcilable with *Kuney* and *Alston.*" 613 A.2d at 1243. Since Santiago's complaint dealt with the handling of his claim, it had to be addressed under the Act. *Id.* The court did not explicitly deal with the fact that the original injury was aggravated by this process.

berg's injuries from the delay in benefits have

Federal courts presiding over diversity cases must give decisions of state intermediate appellate courts "substantial weight in the absence of an indication that the highest state court would rule otherwise." *City of Philadelphia v. Lead Industries Ass'n,* 994 F.2d 112, 123 (3d Cir.1993). Deference must therefore be given to *Santiago,* although it is not clear to what extent the superior court considered aggravation of injury. This deference is particularly appropriate in light of the fact that the court in *Martin* made no mention of *Kuney* or *Alston.* Notwithstanding the language suggesting otherwise, *supra,* had the court found independent grounds for its decision in the fact that Martin's original injury had been aggravated, it likely would have distinguished those earlier cases. *See also Henry v. Twin City Fire Ins. Co.,* No. CIV.A. 92–1504, 1992 WL 129619 (E.D.Pa. June 10, 1992) ("*Martin* creates a very narrow exception. ...")

Therefore, this court finds that the exclusivity provision of the Worker's Compensation Act covers the defendant's refusal to pay benefits and its general handling of plaintiff's benefit claims.

However, plaintiff contends that the bad faith statute, 42 Pa.C.S.A. § 8371, postdates and supersedes the Act. Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

If this provision were to supersede the Workmen's Compensation Act, then plaintiff might be able to bring this bad faith claim even though her other causes of action were

their origin solely in the accident at work.

dismissed. However, this court finds § 8371 inapplicable for two reasons.

First, according to the express terms of the statute, a bad faith claim may only be brought "in an action arising under an insurance policy." Courts which have analyzed the statute have employed a liberal reading of this requirement. As the superior court recently pointed out: "As 42 Pa.S.C.A. § 8371 was promulgated to provide additional relief to insureds and to discourage bad faith practices of insurance companies, we would be reluctant to impose any limitations of claims brought under section 8371 which do not appear in the plain language of the statute." *March v. Paradise Mutual Ins. Co.*, 435 Pa.Super. 597, 646 A.2d 1254, 1256 (1994).

■ Thus, courts have held that success on a bad faith claim under § 8371 does not depend on the success of the underlying insurance benefits claim. *Id.* (bad faith claim is not affected by the one-year limitations period in the insurance contract); *accord Margolies v. State Farm Fire & Cas. Co.*, 810 F.Supp. 637 (E.D.Pa.1992); *Boring v. Erie Ins. Group*, 434 Pa.Super. 40, 641 A.2d 1189 (1994) (dismissal of appellant's § 8371 claim was instantly appealable even though insurance coverage claim had not yet been decided); *Kauffman v. Aetna Cas. & Sur. Co.*, 794 F.Supp. 137, 140 (E.D.Pa.1992) (§ 8371 does not "merely allow[ ] a court to provide an additional remedy"). Rather, they have found that § 8371 establishes a separate and independent cause of action. *See, e.g., Margolies*, 810 F.Supp. at 642; *March*, 646 A.2d at 1256–57.

■ However, it is unlikely that "separate and independent" means that a claim of bad faith may be brought even if the court has *no jurisdiction* to hear the other causes of action. In other words, the bad faith claim under § 8371 must be related to at least one other colorable claim over which the court has jurisdiction.[13] It is one thing to dismiss an insurance contract claim because of a statute of limitations problem, but nevertheless proceed with the bad faith claim. It is quite another thing to dismiss a group of claims because the court is forbidden by statute to judge such claims, but nevertheless proceed with the bad faith claim. Whatever might be the boundaries of "in an action arising under an insurance policy", allowing plaintiffs here to proceed alone with a bad faith claim would be overstepping them.

■ Second, even if bringing a § 8371 claim under these circumstances did comply with that language, this court is not convinced that the statute supersedes the exclusivity provision of the Worker's Compensation Act. Contrary to plaintiff's assertions, § 8371 conflicts with the Act.[14] § 8371 al-

**13.** Under the plain language of the statute, it seems reasonably clear that a § 8371 claim may not be the sole claim of a plaintiff. Though the issue has not been addressed directly by the courts, the Superior Court in *March* implied that a § 8371 claim must be accompanied by some other claim: *"While section 8371 provides relief only in actions 'arising under' an insurance policy*, the statute does not indicate that success on the bad faith claim is reliant upon the success of the contract claim."* 646 A.2d at 1256 (emphasis added). *See also Kauffman*, 794 F.Supp. at 140 (bad faith need not have occurred during pendency of an action). Had the legislature wanted to allow a person wronged by his or her insurance company to sue directly, and *only*, under § 8371, surely it would not have used the language it did.

**14.** Plaintiff suggests that this court "narrow[ ] the judicial construction of the Worker's Compensation Act in light of § 8371." Plaintiffs' Answer to Defendant's Motion to Dismiss at 12. By construing the exclusivity provision more nar-

rowly than in *Kuney* and its progeny, this court might avoid a conflict between the two provisions. However, while the bad faith statute evidences a legislative concern with bad faith practices of insurance companies, this court finds no license in § 8371 to disregard or give short shrift to the case law of the Pennsylvania courts concerning the Worker's Compensation Act as it has evolved thus far. (As Defendant correctly points out, § 8371 was in effect when *Kuney, Alston*, and *Santiago* were decided. In none of these cases did the court grant less immunity in light of § 8371.)

Moreover, the cases cited by plaintiffs to support the claim that the provisions are not inconsistent are inapposite. Those cases, *see, e.g., Okkerse v. Prudential Property & Casualty Ins. Co.*, 425 Pa.Super. 396, 625 A.2d 663 (1993); *Seeger v. Allstate Ins. Co.*, 776 F.Supp. 986 (M.D.Pa.1991), deal with inconsistent remedies between § 8371 and other provisions, such as the No-Fault Act and the Motor Vehicle Financial Responsibility Law. Those courts reasoned

lows an insured to bring a bad faith claim against his or her insurance company, while the exclusivity provision of the Workmen's Compensation Act bars additional claims by an employee against his or her employer and its worker's compensation insurance company.

Under Pennsylvania's Statutory Construction Act, a conflict between a general statutory enactment, such as § 8371, and a more specific provision, such as the exclusivity clause of the Worker's Compensation Act, is to be resolved as follows:

> Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

1 Pa.S.C.A. § 1933.[15]

Plaintiffs argue that the general provision of § 8371 should prevail, since it was enacted later than the Worker's Compensation Act [16] and the General Assembly manifested the intent that it should prevail. As evidence of this intent, plaintiffs point to § 31(c) of Act 6 of February 7, 1990, P.L. 11 § 3 of which Act established § 8371—which provides: "All other acts and parts of acts are repealed insofar as they are inconsistent with the act." The superior court relied upon this provision in *Okkerse v. Prudential Property & Casualty Ins. Co.*, 425 Pa.Super. 396, 625 A.2d 663, 667 (1993), holding that in case of a conflict between the remedies provided in § 8371 and in the No–Fault Act, § 8371 should prevail since "[it] was enacted later than the No–Fault Act and this repealer section indicates that the General Assembly intended it to prevail over any inconsistent statutes."

This court is not convinced, however, that the legislature intended § 8371 to trump the Worker's Compensation Act.[17] The central role that the exclusivity provision historically has played in the system of compensating workers, as well as the Act's comprehensive system of penalties, strongly suggest that the immunity of worker's compensation insurers in their handling of claims should not be lifted in the absence of explicit authorization by the legislature, or perhaps the courts, of Pennsylvania.[18] Therefore, plaintiff may not avail herself of § 8371 insofar as it concerns defendant's refusal to pay her worker's compensation benefits and its general handling of her insurance claims.

### b. Dr. Bennett's Examination

▮ Dr. Bennett's examination of plaintiff is more akin to those cases in which the exclusivity provision of the Worker's Compensation Act did not bar suits against em-

---

that inconsistent remedies did not automatically make the provisions irreconcilable, since a plaintiff might not be entitled to damages under both claims. In this case, on the other hand, the conflict is not between remedies, but between a court taking or not taking jurisdiction over a claim in the first place. This type of inconsistency makes our provisions irreconcilable at the outset.

**15.** The court notes that "effect may be given to both" provisions by holding that a § 8371 claim may not be brought on its own, *supra*. Since § 8371 seems to require an underlying insurance policy claim, there is no inconsistency where, as here, no such insurance claim may be brought.

**16.** 77 Pa.S.A. § 481 was last amended in 1974. § 8371 was enacted in 1990.

**17.** This conclusion is consistent with Judge Shapiro's decision in *Henry v. Twin City Fire Ins. Co.*, No. CIV.A. 92–1504, 1992 WL 129619, at *2 (E.D.Pa. June 10, 1992) ("The general statutory penalties for an insurer's bad faith provided in 42 Pa.S.C.A. § 8371 do not apply where the legislature has provided a more specific remedy.")

**18.** It is doubtful that the legislature intended the repealer section of § 8371 to give insureds an unfettered right to court. For example, an excessively stale claim certainly would be barred, even though such a result would be "inconsistent" with the plain language of the statute. In other words, in order to avoid allowing the repealer provision to trump the relevant statute of limitations, the court must assume that the legislature intended some limit. Similarly, this court assumes that the legislature intended the worker's compensation immunity to limit the application of the bad faith provision.

ployers or their compensation insurance carriers. Like "the direct injury resulting from the carrier's administration or coordination of medical treatment in *Tropiano* and *Taras*," *Santiago*, 613 A.2d at 1243, Dr. Bennett's allegedly abusive behavior was the direct cause of physical and psychological injury to plaintiff.[19] These injuries included traumatic blow injuries, spinal injury, and emotional damage which contributed to a suicide attempt not long after the examination—an examination that was part of defendant's administration of medical treatment and not "intertwined" with the original injury.

As in *Martin*, plaintiff "is not seeking compensation for the work-related injury itself." 606 A.2d at 447. Moreover, Dr. Bennett's alleged behavior is "the type of flagrant misconduct," *Id.* A.2d at 448, that was held by the supreme court to pierce the exclusivity provision's shield from employers, insurance carriers, and their agents. Therefore, the exclusivity provision does not apply to the examination by Dr. Bennett.

### 4. Resolution

Given the distinction between defendant's various acts, this court must examine the specific causes of action brought by plaintiff and determine to what extent plaintiff may proceed with her claims.

#### a. Intentional Infliction of Emotional Distress

Pennsylvania courts have recognized the tort of the intentional infliction of emotional distress. *See, e.g., Motheral v. Burkhart*, 400 Pa.Super. 408, 583 A.2d 1180 (1990). "The plaintiff must prove that the defendant, by extreme and outrageous conduct, intentionally or recklessly caused the plaintiff severe emotional distress." *Id.* 583 A.2d at 1188. This court cannot say as a matter of law that the actions of defendant *per* Dr. Bennett do not rise to the requisite level of outrageous conduct to sustain plaintiff's cause of action.

Defendant's reliance on *D'Ambrosio v. Pennsylvania Nat'l Mut. Casualty Ins. Co.*, 494 Pa. 501, 431 A.2d 966 (1981), for the proposition that a cause of action based on the intentional infliction of emotional distress may not be brought against an insurer for bad faith conduct is misplaced. The court in *D'Ambrosio* ruled out such an action, but only because the facts as alleged did not constitute "extreme and outrageous" conduct. *Id.* 431 A.2d at 971 n. 8. The court's only blanket prohibition concerning insurers dealt with emotional distress and punitive damages as supplemental remedies to the Unfair Insurance Practices Act.

Therefore, plaintiff may proceed with her claim of the intentional infliction of emotional distress as brought about by Dr. Bennett's examination. However, defendant's Motion to Dismiss this claim will be granted as it pertains to defendant's refusal to pay benefits.

#### b. Intentional Breach of Contract

Plaintiff states in her complaint that a contractual breach is constituted by "[t]he failure to pay medical bills on the part of the defendant." Plaintiffs' Complaint ¶ 37. This failure to pay medical bills—part of the general handling of plaintiff's worker's compensation insurance claims—is immunized from private suit by the exclusivity provision of the Worker's Compensation Act. Accordingly, defendant's Motion to Dismiss this claim will be granted.

#### c. Common Law Fraud and Deceit

The acts of defendant claimed by plaintiff to constitute common law fraud and deceit relate to defendant's refusal to pay benefits and its representation that it had genuinely reviewed plaintiff's claims. Plaintiffs' Complaint ¶ 47. Consequently, they are immunized from private suit by the exclusivity provision of the Worker's Compensation Act. Defendant's Motion to Dismiss this claim will be granted.

#### d. Unfair Trade Practices and Consumer Protection Law

Plaintiff claims that defendant violated the Unfair Trade Practices and Consumer Pro-

---

**19.** It is not clear from plaintiff's complaint whether the examination by Dr. Bennett also aggravated her existing injuries. Aggravation of the injuries also would be compensable. Considering the nature of the activity which brought it about—a far cry from the general handling of claims—the exacerbation of the original injury neither "[arose] in the course of employment" nor "naturally result[ed] from the injury." 77 Pa.S.A. § 411(1).

tection Law, 73 Pa.S.A. § 201–1, by "refusing to pay plaintiff's medical expenses contrary to contract and the laws of the Commonwealth of Pennsylvania." Plaintiffs' Complaint ¶ 57. Again, since the refusal to pay medical expenses is immune from private suit, defendant's Motion to Dismiss this claim will be granted.

### e. § 8371—Bad Faith

The examination by Dr. Bennett occurred during, and as a result of, defendant's adjustment of plaintiff's claims for benefits under the insurance policy. Therefore, the court believes that plaintiff's claim for the intentional infliction of emotional distress "arises under an insurance policy." Accordingly, plaintiff's § 8371 bad faith claim as it involves the examination by Dr. Bennett survives defendant's Motion to Dismiss. However, this issue may be readdressed at a later stage of this litigation.[20]

20. Defendant also moves to dismiss Count 15, which is a general claim for punitive damages. Defendant correctly contends that a request for punitive damages is not a cause of action in and of itself, and a claim for punitive damages may not be maintained absent an independent cause of action for actual damages. *Nix v. Temple University*, 408 Pa.Super. 369, 596 A.2d 1132 (1991). Therefore, the court will grant plaintiff leave pursuant to Fed.R.Civ.P. 15(a) to amend her complaint so as to incorporate a punitive damages claim into the § 8371 cause of action. Plaintiff's complaint already includes a claim for punitive damages corresponding to the intentional infliction of emotional distress.