602 A.2d 882

**Brian TARAS and Nancy Taras, Appellant,**

v.

**WAUSAU INSURANCE COMPANIES, Barbara Eckels, R.N., David L. Scasta, M.D., Penn Executive Diagnostic Center, Inc., Penn Diagnostic Center, and Philadelphia Psychiatric Center.**

Superior Court of Pennsylvania.

Argued Sept. 18, 1991.

Filed Feb. 6, 1992.

---

Brian M. Monahan, Easton, for appellant.

Glenn M. Campbell, Philadelphia, for appellees Wausau Ins. Companies and Eckels.

Before JOHNSON, FORD ELLIOTT and HESTER, JJ.

FORD ELLIOTT, Judge:

This is an appeal from the December 20, 1990 order of the Court of Common Pleas of Bucks County, granting Wausau Insurance Company and Barbara Eckels' preliminary objections and dismissing appellants' complaint with prejudice. The trial court concluded that Eckels and Wausau were immune from suit pursuant to the statutory immunity provisions in the Workmen's Compensation Act. Because we find the injury for which appellant seeks redress from these appellees to be non-work related, we reverse the order granting appellees' preliminary objections.

Appellant, Brian Taras, was involved in an automobile accident during the scope and course of his employment. As a result of the accident, Taras suffered physical injuries, as well as depression and anxiety. Wausau Insurance Company, in its capacity as worker's compensation carrier for Taras' employer, provided compensation benefits for Taras.

In addition to handling Taras' benefits claim, Wausau coordinated Taras' medical treatment. Barbara Eckels, a registered nurse, analyzed and monitored Taras' treatment on behalf of Wausau Insurance Company. Brian Taras alleges that Nurse Eckels informed Taras that he was to undergo such treatment, as determined necessary by Wausau, in order to continue his eligibility for benefits.

On August 23, 1985, Nurse Eckels informed Taras that she had arranged for him to be evaluated by various physicians at the Penn Diagnostic Center. After undergoing psychological testing and evaluation, the physicians at Penn Diagnostic Center recommended that Taras undergo treatment at Philadelphia Psychiatric Center. Taras was hospitalized at the Center from November 13, 1985, through November 22, 1985. While at the center, Taras came under the care of Dr. David L. Scasta, who thereafter treated Taras until April of 1987.

In February of 1987, Dr. Scasta recommend that Taras undergo electro convulsive therapy ("electric shock treatment"). Taras was again admitted to the Philadelphia Psychiatric Center, and on February 17, 1987, underwent electro convulsive therapy, performed under the supervision of Dr. Scasta.

Eventually, in April of 1987, Taras came under the care of Doctors Allan and Harriet Wells, who diagnosed him as suffering from Post Traumatic Stress Disorder. The diagnosis indicated that the disorder initially resulted from Taras' activities as a soldier in the Vietnam War. The disorder was then exacerbated by the automobile accident and subsequent electro convulsive therapy.

As a result of being diagnosed as suffering from Post Traumatic Stress Disorder and being advised that electro convulsive therapy was an inappropriate form of treatment for such disorder, Taras filed a lawsuit against Wausau Insurance Company, Barbara Eckels, R.N., David L. Scasta, M.D., Penn Diagnostic Center, Penn Executive Diagnostic Center, Inc., and the Philadelphia Psychiatric Center.

Taras' claim against Wausau and Eckels was that they were negligent in directing and coordinating his medical care; care which they indicated was necessary in order for Taras to continue receiving compensation benefits.

 Wausau and Eckels filed preliminary objections to the complaint, raising statutory immunity under the Workmen's Compensation Act as an affirmative defense.[1] Following oral argument, the Honorable Michael J. Kane granted the preliminary objections and dismissed the complaint against Wausau and Eckels, with prejudice. This timely appeal followed.

Appellants raise two issues for our consideration.

I. Whether appellants' complaint sets forth a cause of action against appellee, Wausau Insurance Companies, which is not subject to the statutory immunity from tort liability provided pursuant to the workmen's compensation act?

II. Whether appellants' complaint sets forth a cause of action against appellee, Barbara Eckels, R.N., which is not subject to the statutory immunity from tort liability provided pursuant to the workmen's compensation act?

 We shall address these issues simultaneously, as they both pose the same query; the extent to which the workmen's compensation act will provide immunity to the compensation carrier and its employees or agents.

Initially, we note that the standard of review which we apply when examining a challenge to an order sustaining preliminary objections in the nature of a demurrer, is well-settled.

1. We urge counsel for appellees to take note that immunity is an affirmative defense which is properly raised in new matter, rather than by preliminary objections. 42 Pa.R.C.P. 1030. *See also Heifetz v. Philadelphia State Hospital,* 482 Pa. 386, 393 A.2d 1160 (1978). However, because appellants failed to challenge the propriety of appellees' raising immunity in its preliminary objections, either before this court or the trial court, we can properly rule on the preliminary objections. *Farinacci v. Beaver County Industrial Development Authority,* 510 Pa. 589, 511 A.2d 757 (1986).

All material facts set forth in the complaint, as well as all inferences reasonably deducible therefrom, are admitted as true for [the purposes of this review.] *Clevenstein v. Rizzuto,* 439 Pa. 397, 266 A.2d 623 (1970). The question presented by the demurrer is whether on the facts averred the law says with certainty that no recovery is possible. *Hoffman v. Misericordia Hospital of Philadelphia,* 439 Pa. 501, 267 A.2d 867 (1970). Where doubt exists as to whether a demurrer should be sustained this doubt should be resolved in favor of overruling it. *Birl v. Philadelphia Electric Co.,* 402 Pa. 297, 167 A.2d 472 (1960).

*DeGenova v. Ansel,* 382 Pa.Super. 213, 216, 555 A.2d 147, 149 (1988). With this standard in mind, we conclude that the trial court erred in sustaining appellees' preliminary objections in the nature of a demurrer.

As stated previously, the trial court concluded that Wausau and Eckels were entitled to statutory immunity provided by § 303(a) of the Pennsylvania Workmen's Compensation Act. Section 303(a) of the Workmen's Compensation Act provides:

The liability of an employer under this act shall be exclusive and in place of any and all other liability to such employees, his legal representative, husband or wife, parents, dependants next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in § 301(c)(1) and (2) or occupational disease as defined in § 108.

77 P.S. § 481. The exclusivity provision of this section has been held to bar tort actions flowing from any work-related injury. *Lewis v. School District of Philadelphia,* 517 Pa. 461, 538 A.2d 862 (1988). A "work-related injury" is defined under §§ 301(c)(1) and (2) of the Act, which provides:

§ 411. 'Injury,' 'personal injury,' and 'injury arising in the course of his employment' defined

(1) The terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition,

arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury; and wherever death is mentioned as a cause for compensation under this act, it shall mean only death resulting from such injury and its resultant effects, and occurring within three hundred weeks after the injury. The term 'injury arising in the course of his employment,' as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe because of reasons personal to him, and not directed against him as an employe or because of his employment; but shall include all other injuries sustained while the employe is actually engaged in the furtherance of the business or affairs of the employer, whether upon the employer's premises or elsewhere, and shall include all injuries caused by the condition of the premises or by the operation of the employer's business or affairs thereon, sustained by the employe, who, though not so engaged, is injured upon the premises occupied by or under the control of the employer, or upon which the employer's business or affairs are being carried on, the employe's presence thereon being required by the nature of his employment.

(2) The terms 'injury,' 'personal injury,' and 'injury arising in the course of his employment,' as used in this act, shall include, unless the context clearly requires otherwise, occupational disease as defined in section 108 of this act: Provided, That whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death resulting from such disease and occurring within three hundred weeks after the last date of employment in an occupation or industry to which he was exposed to hazards of such disease: And provided further, That if the employe's compensable disability

has occurred within such period, his subsequent death as a result of the disease shall likewise be compensable. The provisions of this paragraph (2) shall apply only with respect to the disability or death of an employe which results in whole or in part from the employe's exposure to the hazard of occupational disease after June 30, 1973 in employment covered by The Pennsylvania Workmen's Compensation Act. The employer liable for compensation provided by section 305.1 or section 108, subsections (k), (1), (m), (o), (p) or (q), shall be the employer in whose employment the employe was last exposed for a period of not less than one year to the hazard of the occupational disease claimed. In the event the employe did not work in an exposure at least one year for any employer during the three hundred week period prior to disability or death, the employer liable for the compensation shall be that employer giving the longest period of employment in which the employe was exposed to the hazards of the disease claimed.

77 P.S. § 411. As noted by the Supreme Court in *Lewis*, this exclusivity provision,

is a version of the historical *quid pro quo* employers received for being subjected to a no-fault system of compensation for worker injuries. That is, while the employer assumes liability without fault for a work-related injury, he is relieved of the possibility of a larger damage verdict in a common law action.

*Id.*, 517 Pa. at 471, 538 A.2d at 867 (citations omitted).

Furthermore, the trial court relied upon the language of Section 305 to support its conclusion that Wausau and Eckels were entitled to statutory immunity from this lawsuit. Section 305 of the Workmen's Compensation Act provides, in pertinent part:

Every employer liable under this act to pay compensation shall insure the payment of compensation in the State Workmen's Insurance Fund, or in any insurance company ... authorized to insure such liability in this Common-

wealth ... Such insurer shall assume the employer's immunities and protection hereunder ...

77 P.S. § 501.

As appellees note, two recent decisions of the appellate courts of this Commonwealth, interpreting these sections of the Workmen's Compensation Act, have concluded that insurance carriers are entitled to the same immunity in processing a compensation claim as the employer. Specifically, appellees argue that *Kuney v. PMA Insurance Companies*, 525 Pa. 171, 578 A.2d 1285 (1990), and *Alston v. St. Paul Insurance Companies*, 389 Pa.Super. 396, 567 A.2d 663 (1989), *appeal granted* 527 Pa. 621, 592 A.2d 42 (1991)[2], control the resolution of the issues presented herein. According to appellees, the trial court correctly applied the holdings from those cases when it concluded that Wausau and Eckels were entitled to statutory immunity under the Workmen's Compensation Act.

Appellants maintain that *Alston* and *Kuney* are distinguishable from the case *sub judice*, and that to apply the holdings from those cases in this instance would be to paint too broad a stroke with the brush of immunity. We agree with appellants that the holdings from those cases have no application to the claim at bar.

Both *Alston* and *Kuney* involved suits by claimants against carriers grounded in theories of wrongful or fraudulent termination of benefits. In *Kuney, supra,* an employee of Continental Data Systems, George Kuney, was injured on the job. Mr. Kuney filed a claim petition with his employer's compensation carrier, PMA Insurance Company. PMA refused to pay any benefits despite its alleged knowledge that Kuney was clearly entitled to compensation. Kuney initiated legal action to recover his benefits, and was

2. We note that the *Alston* decision was a 4–4 plurality decision by a nine-member panel of this court. Judge Cirillo authored the lead opinion, joined by Judges Olszewski, Tamilia, and Popovich. Judge Johnson and Judge Rowley filed dissenting statements which were joined by Judge Melinson. Judge Brosky filed a concurring and dissenting statement. Judge McEwen did not participate in the decision of this case.

ultimately awarded benefits plus interest on past-due benefits and legal fees. The decision by the referee was eventually upheld by the Commonwealth Court. *See Kuney v. Workmen's Compensation Appeal Board,* 127 Pa.Cmwlth. 628, 562 A.2d 931 (1989).

While litigating his claim for compensation benefits, Kuney initiated a separate action against PMA seeking damages for PMA's fraudulent denial of his benefits. The trial court sustained PMA's preliminary objections, concluding that Kuney's sole remedies for any injuries sustained as a result of PMA's conduct in handling the claim were provided under the Workmen's Compensation Act. The Superior Court reversed the trial court, holding that the Workmen's Compensation Act did not bar Kuney's suit against PMA. The Supreme Court granted allocatur to address the issue of whether the exclusivity clause in the Act, 77 P.S. § 481(a), barred a common law tort action for fraudulent denial of a claim by a claimant against his employer's compensation carrier. In attempting to resolve this issue, the Supreme Court placed great weight on the fact that the Act itself provided remedies for the injuries Kuney alleged to have suffered as a result of PMA's fraudulent denial of his claim.

> In determining whether the appellee's alleged injury is subject to the exclusive remedies of the Workmen's Compensation Act or whether it is remediable in tort, we must examine the scope of the statute and its remedies to determine the intent of the legislature. One salient feature of the statute is its statutory penalty provisions. The appellant argues that permitting a tort action would be inconsistent with the fact that the compensation statute provides a comprehensive system for adjudicating workers' compensation disputes, including specific remedies for the alleged injury.

*Kuney,* 525 Pa. at 175, 578 A.2d at 1286–87. Thus, because the claim in *Kuney* was ultimately based upon an injury compensable under the Act, the claimant was limited to remedies provided for under the Act.

Accordingly, inasmuch as the appellee's claim is ultimately based upon an injury compensable under the Workmen's Compensation Act, he is limited to the remedies provided within the framework of the act. The exclusivity provisions of the workers' compensation law prohibit a tort action against the insurance carrier for damages caused by the insurer's allegedly intentional mishandling of the injured employee's compensation claim.

*Kuney*, 525 Pa. at 177, 578 A.2d at 1288.

In the present case, Taras' claim against Wausau and Eckels in *not* based upon an injury compensable under the Act. Rather, Taras seeks redress for a separate, non-work related injury. Therefore, Taras is not limited to the remedies provided within the framework of the Act.

Similarly, in *Alston, supra,* this court likewise relied extensively upon the availability of administrative remedies under the Act to support its conclusion that the compensation carrier was immune from suit by the claimant for fraudulently denying benefits. Briefly, *Alston* involved an action by Calvin Alston against St. Paul Insurance Companies, the firm retained by St. Paul to administer the case, and the physician who issued the affidavit of recovery. Alston alleged that these groups conspired to fraudulently deny him benefits under the Workmen's Compensation Act. According to Alston, St. Paul decided to take an aggressive approach toward Alston's claim, and fraudulently obtained a physician's affidavit of recovery. St. Paul then utilized that affidavit in an attempt to negotiate a lump sum settlement with Alston. When Alston balked at the settlement, St. Paul filed a petition to terminate benefits. The gravamen of Alston's complaint was that defendants had engaged in a course of tortious conduct designed to fraudulently deny him benefits. The trial court granted summary judgement on behalf of all defendants, holding that they were immune from this action under the provisions of the Workmen's Compensation Act.

On appeal, this court affirmed, focusing on the availability of remedies under the Act to support its holding.

Pennsylvania's Workmen's Compensation statute provides a host of administrative remedies for those claimants who believe their compensation has been *wrongfully suspended or terminated by the workmen's compensation insurer.* Aggrieved claimants can receive interest on all past due compensation; litigation costs; and counsel fees where the insurer did not have a reasonable basis to contest the claim. In addition, they can receive remuneration for fees paid to witnesses, medical examinations, and lost time to attend the proceedings to contest the termination or suspension. Moreover, they may recover against the insurer in an amount up to twenty percent of the benefits due in cases of unreasonable or excessive delays ... Thus, in addition to assuring quick, fair, and certain compensation, our legislators also considered the plight of an injured worker who might be intimidated or disadvantaged by the superior bargaining position of an insurance company, and responded with sanctions and procedures designed to obviate the need for common law actions.

*Alston,* 389 Pa.Super. at 408, 567 A.2d at 669 (emphasis added).

Thus, while it is true that the exclusivity section of the Workmen's Compensation Act serves to provide insurance carriers with immunity from suits when the claims for which redress is sought are compensable through the administrative remedies of the Act itself, such immunity is not boundless. Rather, the boundaries are determined by the nature of the injury alleged and the role of the carrier with respect to that injury. To hold otherwise would be to extend the immunity provisions beyond the logical scope of the Act itself.

As appellants note, the nature of their action against Wausau and Eckels is quite different from the actions which were disallowed in *Kuney* and *Alston.* Appellants are not claiming that appellees fraudulently or wrongfully denied or discontinued Brian Taras' compensation benefits with respect to any work-related injury. Nor are they

seeking the type of damages which would flow from such a claim: past due benefits, interest, costs, and fees. If such were the case, then the holdings from *Kuney* and *Alston* would certainly apply to bar such an action, as appellants would have ample administrative remedies at their disposal to recoup such losses.

However, such is not the case. Instead, appellants are claiming that appellees caused Brian Taras direct physical harm through their negligence in directing and advising him to obtain medical care which was improper given Taras' condition. Specifically, appellants allege that Barbara Eckels, a registered nurse and an agent or employee of Wausau, was negligent in her evaluation of Brian Taras' condition and the course of treatment which she arranged for Taras; treatment which Eckels insisted Taras must undergo in order to maintain his eligibility for benefits, according to appellants allegations. The treatment which Brian Taras ultimately received, electro convulsive therapy, is alleged to have caused direct psychological damage to Brian Taras and to have exacerbated his true underlying condition, post traumatic stress disorder. A condition which, according to appellants' allegations, has its ultimate basis in Taras' participation in the Vietnam War, and not in the underlying work-related accident, as appellees contend.

Thus, the injuries and damages sought by appellants in this instance are not of the same nature as those sought by the claimants in *Kuney* and *Alston*. Appellants do not seek past due benefits, interest thereon, attorneys fees, or costs. Rather, appellants seek recompense for the psychological and emotional injuries suffered by Brian Taras as the result of receiving electro convulsive therapy—a non-work related injury. To the extent that Wausau and Eckels' negligence contributed to Brian Taras receiving such therapy, he now seeks recovery from them.

The damages which appellants seek, therefore, are not the type which fall within the ambit of the administrative remedies provided for in the Act, nor are they otherwise compensable under the Act. Thus, the rationale behind

*Kuney* and *Alston* for applying the exclusivity provision of the Act so as to provide immunity to carriers from suits by claimants, is inapplicable in this instance.

Rather, our research reveals that the present case is more akin to the case of *Tropiano v. Travelers Insurance Co.*, 455 Pa. 360, 319 A.2d 426 (1974), and that the holding from that case should control the resolution of the present issues.

Domenic A. Tropiano was an employee of Vare Brothers, when he was injured during the course of his employment. Travelers was the workmen's compensation carrier for Tropiano's employer. Tropiano received a series of treatments at the direction of Travelers which proved to be not only ineffective, but actually harmful. Tropiano filed suit against the various doctors and Travelers for the harm he suffered because of the improper treatment.

The issue framed by the court in *Tropiano* is virtually identical to the one presently before this court.

The issue then presented to this court, through its grant of allocatur, is as follows: Whether an employer's workmen's compensation carrier is immune from liability in trespass to an employee for injuries allegedly caused by the insurer's negligence in supplying medical services in the treatment and care of any injury previously sustained by the employee in the course of his employment.

*Tropiano*, 455 Pa. at 361, 319 A.2d at 427. In addressing that issue, the court recognized the importance of determining whether the alleged injuries arose during the course of Tropiano's employment.

In *DeJesus v. Liberty Mutual Insurance Co.*, 439 Pa. 180, 268 A.2d 924 (1970), and *Brown v. Travelers Insurance Co.*, 434 Pa. 507, 254 A.2d 27 (1969), our court held that an insurance carrier was immune from common law tort liability with respect to actions filed by employees seeking recovery for injuries sustained *in the course of their employment.* Although *DeJesus, supra,* answered the question of the insurance carrier's liability for negligence occurring during the course of an employee's em-

ployment, it does not answer the difficult question before us today ...

We must, therefore, decide if the injuries for which appellant seeks recovery herein arise during the course of his employment because only for those injuries does an employer receive immunity from liability under the act.

*Id.* 455 Pa. at 362, 319 A.2d at 427 (emphasis in original).

This is precisely the distinction which appellants maintain distinguishes the present case from *Alston, supra,* and *Kuney, supra.* Appellants contend that the injuries for which they seek redress are separate and distinct from the injury which arose during the course of Taras' employment.

Once the *Tropiano* court framed the issue and established the critical distinction, it resolved the issue by concluding that injuries caused by medical treatment administered at the direction of the carrier are not the type of injuries for which the carrier should be immune from liability.

We are of the opinion that acts of negligence arising out of medical treatment directed and controlled by the insurance carrier should not be classified as occurring during the course of employment. The medical treatment of injuries is a separate and distinct function of the insurance carrier which does not concern the employer and is not part of the employer's business operations. *The alleged acts of negligence in this case were committed by the insurance carrier subsequent to and independent of the original injury* and with no involvement of the employer whatsoever.

*Id.* (emphasis added). That conclusion applies equally as well in this case. The acts of negligence which appellants have alleged that Wausau and Eckels committed, were committed subsequent to *and* independent of the original injury. This is the reason that *Kuney, supra,* and *Alston, supra,* are not controlling in this instance. While the tortious acts of the carriers in those cases may have come after the original injury, they were not independent of it. Rather, in *Kuney* and *Alston,* the tortious acts of the

carriers were completely intertwined with the original injury, as their tortious acts related to the fraudulent denial of benefits for the original injury.

However, in the present case, as in *Tropiano*, there are allegations of separate, additional physical injuries, apart from the original work-related injury. Such injuries allegedly occurring as the result of the carrier's negligence in directing the medical treatment of the claimant, and not in processing the claim for benefits for the underlying injury.

■ In reaching the decision that *Tropiano* controls the outcome of this case, this court is well aware that Tropiano was decided prior to the 1978 amendments to the Act. However, that fact does not change our analysis. It is true that prior to the 1978 amendments, section 306 of the Act required the employer, via the carrier, to provide medical services to injured employees.[3] Thus, the argument could be made that because the carrier was required to provide the medical treatment, the carrier was, in essence, controlling the medical care the claimant was receiving, and thus should be held liable for negligent treatment. Whereas in the present case, because under the current state of the Act the carrier is not required to provide medical treatment, and after fourteen days the claimant was free to pursue treatment with any licensed physician, that the carrier was not controlling Taras' medical treatment and therefore should not be held liable for the harm caused by such treatment.

While such an argument is appealing, superficially, it lacks substance in two respects. First, the fact that Wausau was not required under the Act to provide Taras with medical treatment, as was Travelers in *Tropiano*, further strengthens appellants' argument that this situation is distinguishable from *Alston, supra*, and *Kuney, supra*. Appellants argue that Wausau and Eckels were engaged in a

3. The 1978 amendments to that section provide only that the employee must first seek treatment from one of five physicians designated by the employer for the first fourteen days after the injury occurs. After that, the employee may seek treatment from a licensed practitioner of his choice and the carrier's only responsibility is to pay for the treatment.

separate, additional function from that of processing the claim for benefits, when they committed negligent acts which caused Taras' injuries. Under the current state of the Act, Wausau had no obligation to provide Taras with any medical care. Therefore, to the extent Wausau took it upon itself to oversee Taras' medical treatment and to recommend certain courses of treatment, then Wausau has engaged in activities beyond those protected under the immunity provisions of the Act. Under the direction of Wausau, Eckels did provide a professional service to Taras directly related to the medical treatment he received which allegedly injured him. Therefore, it might be established that any negligence on Eckels' part, as Wausau's agent, clearly could have contributed to causing Taras' injuries.

Second, the allegations by Taras further support the conclusion that Eckels and Wausau directed and controlled Taras' medical treatment. Taras' complaint alleged that Eckels informed him that he was required to undergo whatever treatment the carrier deemed necessary in order to maintain eligibility for his benefits. It must be remembered that in reviewing an order sustaining preliminary objections, all material facts set forth in the complaint, as well as all reasonable inferences deducible therefrom, must be deemed as true. *DeGenova, supra.* Thus, we must accept as true that Nurse Eckels told Brian Taras that he was required to undergo all treatment as Wausau deemed necessary in order for him to remain eligible for benefits. Given the inequitable bargaining power of the parties from the outset, and faced with the threat of losing his benefits, it might be concluded that Taras felt as compelled to undergo the electro convulsive therapy as Tropiano felt compelled to undergo treatment with the carrier's doctors as was required under the state of the Act in 1974. Furthermore, in light of these allegations, the question whether Nurse Eckels and Wausau were totally controlling and directing the treatment Taras was receiving is one left to the trier of fact. Certainly the allegations are sufficient to warrant that this case go further than the preliminary

objection stage. Accepting as true all factual allegations in appellants' complaint, the law does not say for certain that no recovery is possible. Under the *Tropiano* decision, we hold that immunity does not apply under the facts of this case. Where doubt exists as to whether a demurrer should be sustained, the doubt should be resolved in favor of overruling the demurrer. *Birl v. Philadelphia Electric Co., supra.*

Thus, we conclude that this case is factually distinguishable from *Kuney, supra,* and *Alston, supra,* and is not controlled by their holdings. Rather, this case is controlled by *Tropiano, supra,* which provides that under circumstances such as these, where the claimant has alleged separate and distinct injuries caused by the insurance carrier's alleged negligence in directing the claimant's medical care, the carrier will not be afforded immunity under the Workmen's Compensation Act.

Order reversed. Case remanded for further proceedings consistent with this opinion. Jurisdiction relinquished.