## Webb v. Old Republic Insurance Co.

C.P. of Dauphin County, no. 2195 S 1995.

*Leslie M. Fields*, for plaintiff.
*Michael A. Farrell,* for defendant.

BEFORE: TURGEON, HOOVER AND CLARK, *JJ.*

CLARK, *J.,* March 5, 1998—

## PROCEDURAL HISTORY

This action was instituted by a writ of summons that was issued on June 7, 1995. Plaintiffs filed a complaint on or about July 11, 1995, alleging the following three counts; (1) statutory bad faith, (2) breach of implied covenant of good faith and fair dealing and (3) loss of consortium. Defendant, Old Republic, filed preliminary objections to the complaint, which were disposed of by a panel of this court on December 19, 1995. Old Republic demurred to Counts I and II and the claim for punitive damages. The demurrers were denied. Old Republic then filed a petition for permission to appeal the denial of its objections. On April 4, 1996, the Pennsylvania Superior Court denied the petition. Defendants, Old Republic and Crawford and Company, later filed motions for summary judgment. On August 27, 1997, a panel of this court denied Old Republic's motion, but granted summary judgment in favor of Crawford and Company. On September 15, 1997, Old Republic filed a second motion for summary judgment in light of the Pennsylvania Superior Court's recent decision in *Fry v. Atlantic States Insurance Co.,* 700 A.2d 974 (Pa. Super. 1997). On December 4, 1997, a panel of this court entertained oral argument on the matter.

## FACTS

At all times relevant hereto, plaintiff, Nancy Webb, was employed as a courier guard at Emory Worldwide in Middletown, Dauphin County, Pennsylvania. On De-

cember 14, 1989, while plaintiff was lifting an object from the ground, she injured her right shoulder, suffering a rotator cuff tear. In January 1990, plaintiff selected Craig W. Fultz M.D. to perform surgery on her right shoulder and repair her rotator cuff injury. After the surgery, plaintiff was diagnosed with carpal tunnel syndrome. In August 1990, plaintiff was examined by Lance O. Yarus D.O. for the purpose of obtaining an opinion on the cause of the carpal tunnel syndrome. Unlike Dr. Fultz, Dr. Yarus was retained by plaintiff's workers' compensation insurance carrier, Old Republic.

In November 1990, Dr. Fultz permitted plaintiff to return to work with restrictions and limitations on the duties she could perform. However, Dr. Yarus was of the opinion that plaintiff could return to full employment without any restrictions and continue to serve in the same capacity as she had prior to the injury. Based on the instructions of Dr. Yarus, plaintiff resumed her duties at Emory Worldwide in an unrestricted manner. In April 1991, plaintiff began experiencing recurrent shoulder pain and was examined by Dr. Fultz. Dr. Fultz diagnosed rotator cuff tears to both shoulders and again performed corrective surgery on three separate occasions.

In her three-count complaint, plaintiff alleges that as a result of Dr. Yarus' advice and Old Republic's actions, she sustained additional rotator cuff tears requiring other operations and has suffered injuries which have caused permanent and severe damage to her shoulders.

## DISCUSSION

Summary judgment may be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show

that there is no genuine issue as to any material facts and that the moving party is entitled to judgment as a matter of law. *Coleman v. Coleman,* 444 Pa. Super. 196, 663 A.2d 741 (1995), *appeal denied,* 543 Pa. 722, 673 A.2d 330 (1996). The right to summary judgment must be free and clear from doubt. *Hoffman v. Brandywine Hospital,* 443 Pa. Super. 245, 661 A.2d 397 (1995). In ruling on the motion, the trial court must view the evidence in a light most favorable to the non-moving party and any doubt must be resolved against the moving party. *First Wisconsin Trust Co. v. Strausser,* 439 Pa. Super. 192, 653 A.2d 688 (1995). The burden of proof rests upon the moving party to show that there is no genuine issue of a material fact, although the nonmoving party may not rest on the averments contained in its pleadings, but must demonstrate that there is a genuine issue for trial. *Accu-Weather Inc. v. Prospect Communications Inc.,* 435 Pa. Super. 93, 644 A.2d 1251 (1994).

Old Republic first contends that it is entitled to summary judgment as a matter of law since plaintiff has not asserted a cause of action for fraudulent misrepresentation which is required to remove her claims from the statutory scheme of the Workers' Compensation Act. Old Republic argues that when an employee is injured during the course of his employment, he generally has no recourse against his employer or its workers' compensation insurance carrier outside the confines of the WCA, 77 Pa.C.S. §§481(a) and 501. Old Republic interprets the decision of the Pennsylvania Supreme Court in *Martin v. Lancaster Battery Co. Inc.,* 530 Pa. 11, 606 A.2d 444 (1992) as carving out an exception to this general premise granting the ability to proceed with a common-law action of fraudulent misrepresen-

tation when such conduct aggravates a work-related injury.

In *Martin,* the worker was employed by a manufacturer of automotive/truck batteries and had been exposed to lead dust and fumes throughout his employment. Federal safety regulations required that employees working in such conditions be tested on a regular basis to determine the lead content in their blood. The employer willfully and intentionally withheld and altered the worker's test results concealing the true level of lead toxicity in his blood. As a result, the worker was subsequently diagnosed with several lead-related ailments. The severity of his condition would have significantly been reduced had his employer timely and accurately apprised him of his test results.

The worker filed suit on grounds of fraudulent misrepresentation on behalf of his employer for causing a delay which aggravated his work-related injury. The Pennsylvania Supreme Court found that the worker was not limited to the remedies set forth in the WCA and, thus, not precluded from bringing a common-law action for fraud against his employer. *Id.* at 18, 606 A.2d at 448. The court stated that "[c]learly, when the legislature enacted the Workmen's Compensation Act in this Commonwealth, it could not have intended to insulate employers from liability for the type of flagrant misconduct at issue herein by limiting liability to the coverage provided by the Workmen's Compensation Act." *Id.* at 17-18, 606 A.2d at 448.

Old Republic also cites *Fry, supra,* for the proposition that when an employee asserts a cause of action against a workers' compensation carrier for bad faith, that employee must also allege a count for fraudulent misrepresentation. In that case, the worker injured her back during the course of her employment and began re-

ceiving compensation benefits. In November 1994, after a period of treatment with her employer's physician, among others, surgery was recommended. However, the insurers refused to authorize the operation until the worker submitted to a physical examination by their physician, which finally occurred in February 1995. The surgery was performed in April 1995.

Sometime in 1996, a complaint was filed against the insurers alleging bad faith for excessive delay in permitting the surgery. The insurers filed preliminary objections in the nature of a demurrer, arguing that the worker was limited to the remedies available under the WCA and further that her action was barred by the Act's exclusivity provision. The trial court granted the preliminary objections and an appeal followed. The worker's position was based on the premise that the Supreme Court in *Martin, supra,* created an exception to the exclusivity clause of the WCA permitting redress where the employer intentionally acted in causing a delay in treatment that aggravated a work-related injury. Arguing that the exclusivity clause did not apply, the worker contended that she was entitled to recover on a cause of action for bad faith under 42 Pa.C.S §8371. Thus, the issue before the Pennsylvania Superior Court was whether the decision in *Martin, supra,* permitted recovery under the circumstances.

The court in *Fry* distinctly observed that the worker in *Martin* was not seeking damages for a work-related condition that would have been covered by the WCA, but rather for fraudulent conduct on behalf of his employer which caused a delay that exacerbated a work-related injury. *Fry, supra* at 976. The court interpreted *Martin* to stand for the narrow proposition that only suits for deliberate conduct, specifically fraudulent misrepresentation, which aggravates a work-related injury

are permitted to be adjudicated outside the provisions of the WCA. *Id.* Thus, fraud and delay leading to the exacerbation of the injury must be present to remove a claim from the WCA. *Id.* The court explained that *Martin* supplies relief only where the Act is silent, that is, where there has been aggravation of a work-related injury precipitated by fraud since, separately, either may be remedied under the Act. *Id.* at 977.

Because the worker in *Fry* failed to meet the requirements of *Martin,* the court found that her claim for bad faith pursuant to 42 Pa.C.S. §8371 was barred by the exclusivity provision of the WCA. *Id.* The court characterized the issue presented in *Fry* as one for the mishandling of an otherwise valid claim of a work-related injury that resulted in adverse medical repercussions. *Id.* at 978. It found that the provisions of the WCA were broad enough to encompass such an issue and afford an appropriate remedy. *Id.* The court went on to distinguish the type of conduct exhibited by the employer in *Fry* from that present in *Martin.* *Id.* It noted that the employer in *Martin* engaged in "flagrant misconduct" by actively misleading an employee who was already suffering from the workplace hazards, thereby precluding him from limiting his contact with the hazard and receiving prompt medical treatment. Whereas, the worker in *Fry* knew of her injury and did, in fact, receive medical care. *Id.* The court concluded that any claim regarding her later care was so intertwined with her original injury that it was inseparable from it. *Id.* Her form of redress was, thus, limited to that available under the WCA.

Plaintiff contends that *Fry* should not apply to her case since she did not base her allegation of bad faith on excessive delay in treatment. She argues that her situation should be governed by *Martin, supra* and *San-*

*tiago v. Pennsylvania National Mutual Casualty Insurance Co.,* 418 Pa. Super. 178, 613 A.2d 1235 (1992) because she alleged that Old Republic's "flagrant misconduct" in the "administration and coordination of medical treatment" caused her injuries and that this misconduct was knowingly and intentionally committed.

In *Santiago,* the Pennsylvania Superior Court noted that prior to *Martin,* Pennsylvania did not recognize an intentional tort exception to the exclusivity provision of the WCA. It thus interpreted *Martin* as having created a limited exception to the application of the exclusivity provision of the WCA where an employer concealed, altered or intentionally misrepresented information related to a work-related injury which resulted in an aggravation of that injury. *Id.* at 189-90, 613 A.2d at 1239. Plaintiff contends that the second tear to her right rotator cuff and the first tear to her left rotator cuff arose from and are related to the "flagrant misconduct" of Old Republic and, therefore, her cause of action for bad faith should remain.

To follow plaintiff's line of reasoning, we would have to ignore the most recent decision of the Superior court in *Fry, supra.* That we will not do. Plaintiff complains that after receiving treatment for her injured right shoulder, Old Republic's physician released her into the workplace without restrictions, even though her private physician imposed such, thereby causing her to suffer additional injuries in the workplace. Like *Fry,* we find that the essence of plaintiff's complaint is the improper handling of a valid claim of a work-related injury which resulted in adverse medical repercussions. The Superior Court has found that the WCA provides for the handling of such a circumstance. *Fry, supra* at 975.

Plaintiff further argues that her injuries are directly related to Old Republic's administration and coordination of her medical treatment and, therefore, lie outside the scope of the exclusivity provision of the WCA. In support of her position, plaintiff cites *Tropiano v. Travelers Insurance Co.*, 455 Pa. 360, 319 A.2d 426 (1974) and *Taras v. Wausau Insurance Companies,* 412 Pa. Super. 37, 602 A.2d 882 (1992).

In *Tropiano,* the worker was injured in the course of his employment and received a series of treatments that proved unsuccessful and harmful. The worker filed suit in trespass against his employer's workers' compensation carrier and several doctors. The issue before the court was whether an employer's carrier is immune from liability in trespass caused by the carrier's negligence in supplying medical services in the treatment and care of any injury previously sustained by the worker in the course of his employment. *Id.* at 362, 319 A.2d at 427. The court found that the nature of the injuries was the determining factor in resolving this issue since an employer only receives immunity under the WCA for work-related injuries. *Id.* It focused on whether the injuries for which the worker was seeking recovery arose during the course of his employment *Id.* The court concluded that the acts of negligence arising from the medical treatment directed and controlled by the carrier did not occur in the course of the worker's employment. *Id.* It reasoned that the medical treatment of injuries is a function that is separate and distinct from the employer's business operations. *Id.* The court found that the alleged acts of negligence were committed by the carrier after and independent of the original injury and with no involvement of the employer. *Id.* Thus, the worker was permitted to proceed with his claim in trespass.

After *Tropiano,* the Superior Court was presented with a case involving a similar issue. In *Taras, supra,* the worker was injured in an automobile accident in the performance of his employment. The workers' compensation carrier assumed the responsibility for coordinating his medical treatment. During the course of his treatment, the worker was subjected to electro convulsive shock therapy. He was later diagnosed as suffering post traumatic stress disorder, which was found to have resulted from his participation in the Vietnam War and exacerbated by the automobile accident and shock therapy. In light of his diagnosis of PTSD, the worker was advised that the course of treatment was inappropriate.

The worker filed a lawsuit alleging that the workers' compensation carrier was negligent in directing and controlling his medical care. The court was faced with deciding whether the WCA provided the carrier with immunity from this suit. It noted that the exclusivity provision of the WCA has generally "been held to bar tort actions flowing from any work-related injury." *Id.* at 42, 602 A.2d at 884. It went on to recognize that if a claim is not based on an injury compensable under the WCA, the worker is not limited to the remedies provided therein. *Id.* at 47, 602 A.2d at 886.

The court found that the issue in *Taras* was akin to that presented in *Tropiano. Id.* at 50, 602 A.2d at 888. It needed to be determined whether a carrier was immune from liability in trespass to a worker for injuries allegedly caused by the carrier's negligence in supplying medical services in the treatment and care of any injury that was previously sustained by the worker in the course of his employment. *Id.* Again, the determining factor was whether the injuries arose during the course of employment. *Id.* The worker was seeking compensation

for psychological and emotional injuries caused by the shock treatment. The court determined that these particular injuries were separate and distinct from the original injury and not related to his employment. *Id.* at 47, 602 A.2d at 888. The worker was seeking recovery from the carrier to the extent its negligence contributed to the receipt of such therapy. *Id.* The court ruled that where the claimant has alleged a separate and distinct injury caused by the carrier's negligence in directing the claimant's medical care, the carrier will not be afforded immunity under the WCA. *Id.* at 54, 602 A.2d at 890. The court concluded that the worker's injuries were not compensable under the Act. *Id.* at 47, 602 A.2d at 886.

We find plaintiff's reliance on *Tropiano* and *Taras* to be misplaced in light of *Fry.* In both *Tropiano* and *Taras,* the plaintiffs' causes of action sounded in negligence, not bad faith. This distinction should not be overlooked. The acts of negligence allegedly committed in those cases arose from the medical treatment administered by the workers' compensation carrier and were held not to occur in the course of the worker's employment. The plaintiffs' injuries were caused by the medical treatment they received during their course of treatment with no involvement from the employer. In *Tropiano,* the series of treatments administered to the worker proved fruitless and damaging. The worker in Taras was injured by the electro shock therapy directed by his employers.

The courts in those cases found that the determining factor in deciding whether a carrier received immunity under the WCA was the nature of the injuries. The issue then was whether the injuries for which the worker was seeking recovery came about during the course of his employment. If so, such injuries were compensable under the WCA.

In the present situation, plaintiff was not injured by the treatment administered to her. In fact, she received no treatment at the direction of her employer's carrier. As defined in *The American Heritage Dictionary of English Language,* Third Edition, 1996, "treatment" means "a. Administration or application of remedies to a patient or for a disease or an injury; medicinal or surgical management; therapy. b. The substance or remedy so applied." Nowhere in the complaint does plaintiff mention any remedies administered or applied to her for her injuries. Plaintiff's complaint is based upon allegations that her carrier's physician released her to work without restrictions. Specifically, in paragraph 10 of the complaint, plaintiff avers:

"Despite the unequivocal nature of Dr. Fultz's instructions, on or about November 7, 1990, at the request of defendants, Dr. Yarus *issued an opinion* which disagreed with Dr. Fultz's on weight restrictions involving plaintiff's upper extremity. This *opinion* was given without a physical examination of plaintiff and *resulted in defendants' removal of all restrictions on plaintiff's work activities.* Plaintiff was sent back to full employment in the same capacity as she held preceding the rotator cuff tear." (emphasis added)

In her own words, plaintiff contends that her carrier's physician issued an *opinion* that resulted in the removal of all restrictions on her work activities. She does not describe any treatment that was administered by Dr. Yarus and caused her to suffer non-work-related injuries. Moreover, the injuries suffered by plaintiff occurred while she was lifting objects for her employer after her return to work. She sustained an exacerbation of the original work-related injury to her right shoulder and a new injury to her left shoulder. Clearly, these subsequent injuries arose during the course of her em-

ployment. Our Superior Court has directly spoken on allegations of bad faith and, therefore, *Fry* is controlling on this matter.

Based on the foregoing, plaintiff cannot remove her claims from the WCA and seek outside redress for bad faith under 42 Pa.C.S. §8371. She is limited to the form of redress available under the Act. Summary judgment is granted in favor of Old Republic on Count I of plaintiff's complaint.[1]

Old Republic also argues that it is entitled to summary judgment because the exclusivity provision of the WCA is not superseded by the bad faith statute, 42 Pa.C.S. §8371. Since summary judgment has already been granted in favor of Old Republic, we shall refrain from addressing the merits of this argument.

With regards to Counts II and III of the complaint, Old Republic contends that summary judgment should additionally be granted in their favor on the basis that these counts are derivative of Count I. It maintains that actions for breach of implied covenant of good faith and fair dealing and loss of consortium derive their basis from the bad faith action. A review of the complaint indicates that acts which comprise the foundation for bad faith are identical, in fact, verbatim, to those offered in support of the claim for breach of implied covenant of good faith and fair dealing.

---

1. Old Republic also requested that summary judgment be entered in its favor on plaintiff's bad faith claim under 42 Pa.C.S. §8371 since one must be an insured to assert that cause of action and plaintiff is not an insured under the workers' compensation insurance policy. In an opinion and order dated August 27, 1997, Judge Turgeon thoroughly examined this issue and concluded that plaintiff was an unnamed insured under the policy of workers' compensation insurance. We shall not depart from her conclusion since we do not find *Fry* to be controlling on this issue.

Although plaintiff may have characterized the claims differently, they are in essence the same. A rose by any other name is still a rose. Furthermore, the claim for loss of consortium is derivative of Counts I and II and shall accordingly be dismissed.

For the reason outlined herein, we enter the following:

ORDER

And now, March 5, 1998, defendant Old Republic's motion for summary judgment is granted. Plaintiff's complaint is dismissed