J-A24002-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MATTHEW CHARLTON | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| PMA INSURANCE GROUP AND MYLENE ZIMMERMAN | |
| | No. 618 EDA 2015 |

Appeal from the Order January 21, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): December Term, 2013 No. 000914

BEFORE:  PANELLA, J., WECHT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY PANELLA, J.                    **FILED NOVEMBER 06, 2015**

Appellant, Matthew Charlton, appeals from the order that granted judgment on the pleadings to Appellees, PMA Insurance Group and Mylene Zimmerman, in Charlton's action alleging that the Appellees had intentionally inflicted emotional distress upon him.  Charlton contends that the trial court erred in concluding that emotional distress suffered as the result of threats of disclosure childhood sexual abuse made by a workers' compensation insurer is an "injury arising in the course of employment," therefore restricting Charlton's remedies to those provided under the

_____

[*] Retired Senior Judge assigned to the Superior Court.

Workers' Compensation statute. We agree with Charlton, and therefore reverse and remand.

When reviewing a challenge to an order granting judgment on the pleadings, we must accept all well-pleaded allegations in the complaint as true. *See Guerra v. Redevelopment Authority of City of Philadelphia*, 27 A.3d 1284, 1288-1289 (Pa. Super. 2011). We therefore set forth the factual basis for this matter as alleged in Charlton's complaint.

In 1986, Charlton was injured in a workplace accident that left him physically and emotionally injured. From that time to the present, PMA has provided Charlton with benefits pursuant to the Workers' Compensation Act. One of these benefits is psychiatric treatment by Timothy Michals, M.D. During the course of Dr. Michals's treatment, Charlton disclosed that he had been sexually abused as a child. Dr. Michals never treated Charlton for the childhood sexual abuse, and instead referred Charlton to another mental healthcare professional. However, Dr. Michals's treatment notes recorded Charlton's disclosure and the subsequent referral.

Several years later, Zimmerman, a senior account claims representative employed by PMA, requested Dr. Michals's treatment notes for Charlton, in order to review Charlton's continuing eligibility for benefits. Dr. Michal complied with the request, and Zimmerman subsequently contacted Charlton. During the course of their conversation, Zimmerman stated, "we are tired of paying for something that happened to you as a

child." Charlton immediately recognized this as a reference to his childhood sexual abuse and became agitated and anxious, as he believed this to be a threat to shame him with his childhood sexual abuse if he did not settle his workers' compensation claim. In fact, Zimmerman concluded the conversation with a demand that Charlton settle his claim.

Shortly thereafter, Zimmerman left a voice mail message for Charlton, which contained the following.

> Matthew, this is Mylene calling from PMA. When you get a minute and you can talk please give me a call back at []. The only thing that is in question is the recent request for your surgery that we don't feel is related to the original injury back several … back in 1986 because of current things that have gone on with your current work[,] your repetitive motion, you lifting, that sort of thing.
>
> What we talked about the other day actually is done and over. That will never ever be discussed again and that was something that was brought up to me, I brought up to you[.] And that is the only group of people who will be discussing that. So if you want to give me a call back I'd appreciate it. Bye.

Charlton suffered debilitating anxiety, humiliation, fear, and feelings of betrayal from Zimmerman's reference to his childhood sexual abuse.

Charlton subsequently filed a complaint asserting that Zimmerman, as an agent for PMA, had intentionally inflicted emotional distress on him. Appellees filed preliminary objections, which the trial court overruled. Appellees filed an answer with new matter, asserting that Charlton's claim was subject to the exclusivity provisions of the Workers' Compensation Act.

Appellees then filed a motion for judgment on the pleadings, which the trial court granted. This timely appeal followed.

On appeal, Charlton argues that the trial court erred in concluding that the exclusivity provisions of the Workers' Compensation Act ("the Act") applied to his claims. The exclusivity provision of the Act states that

> [t]he liability of an employer under this act shall be exclusive and in place of any and all other liability to such employe, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in § 301(c)(1) and (2) or occupational disease as defined in § 108.

77 P.S. § 481(a). Thus, the Act bars any tort action "flowing from any work-related injury." **_Taras v. Wausau Ins. Companies_**, 602 A.2d 882, 884 (Pa. Super. 1992) (citation omitted). The exclusivity provision is a fundamental part of the statutory scheme whereby employers assume liability without fault for work-related injuries, but are relieved of the risk of the possibly larger verdicts that might result from tort litigation. **_See Lewis v. School District of Philadelphia_**, 538 A.2d 862, 867 (Pa. 1988).

Furthermore, it is well established that "insurance carriers are entitled to the same immunity [from tort claims] in processing a compensation claim as the employer." **_Taras_**, 602 A.2d at 885; **_see also_** 77 P.S. 501(a)(1). In return, the Act provides specific remedies to claimants against insurers who improperly handle a compensation claim. **_See_** 77 P.S. §§ 701-797. Thus, a claimant whose work-related injuries are exacerbated by an insurer's improper conduct in handling the claim is restricted to the remedies provided

in the Act. *See Santiago v. Pennsylvania Nat. Mut. Cas. Ins. Co.*, 613 A.2d 1235 (Pa. Super. 1992). "[A]s the appellee's claim is ultimately based upon an injury compensable under [the Act], he is limited to the remedies provided within the framework of the [A]ct." *Kuney v. PMA Insurance Companies*, 578 A.2d 1285, 1288 (Pa. 1990).

In contrast, a claim that an insurer's conduct in handling a claim exacerbated a non-work-related injury is not subject to the exclusivity provisions of the Act. *See Tropiano v. Travelers Ins. Co.*, 319 A.2d 426 (Pa. 1974); *Taras*, 602 A.2d at 886. The boundaries of the exclusivity provisions of the Act "are determined by the nature of the injury alleged and the role of the carrier with respect to that injury." *Taras*, 602 A.2d at 887.

In *Taras*, the plaintiff, Taras, claimed that the insurance company and its agent were "negligent in directing and coordinating his medical care[]" subsequent to a work-related injury suffered in an automobile accident. *Id*., at 883. Specifically, Taras asserted that the insurer had required him to treat with a doctor who subjected him to electric shock treatment. Subsequently, a different doctor diagnosed Taras as suffering from post-traumatic stress disorder ("PTSD") due to his service in the Vietnam War. This subsequent diagnosis further opined that the electric shock treatment had been inappropriate and therefore exacerbated Taras's PTSD. *See id*.

The trial court granted the insurer's preliminary objections on the grounds of the exclusivity provisions of the Act. *See id*. This Court

reversed, noting that Taras's claim was not based on the work-related injury. *See id*., at 886. Taras was not pursuing a claim that the insurer had wrongfully denied or discontinued his benefits. *See id*., at 887. Furthermore, he was not seeking the types of damages, past due benefits, interest, costs, and fees, that would flow from such a claim. *See id*. Thus, the Act was inapplicable. *See id*.

Here, Charlton has alleged that Zimmerman intentionally caused him injury by referencing a non-work-related psychological injury. *See* Complaint, filed 12/5/13, at ¶¶ 27-29.[1] This injury exacerbated the harm caused by the non-work-related psychological injury. *See id*., at ¶ 52. He seeks damages in the form of pain and suffering, treatment costs, and future wages. *See id*. As such, we conclude that Charlton's claim is not based upon a work-related injury, and that Charlton is not seeking the types of damages that would flow from such a claim. We therefore conclude that *Taras* is directly on point and controls the outcome of this legal question.

Order reversed. Case remanded for further proceedings consistent with this memorandum. Jurisdiction relinquished.

---

[1] The issue of whether Charlton's allegations satisfy the requirements for the tort of intentional infliction of emotional distress, an issue raised by Appellees in their preliminary objections which were overruled by the trial court, is not currently before this Court.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/6/2015